## STATE vs. CHARLES N. ANDREWS.

While an indictment for an assault with intent to murder was on trial, in which it was claimed in defense that the prisoner was insane at the time of the act, one of the standing jurors of the term, who was not sitting in the case, said to one of the sitting jurors, after they had retired for the night to a room which they occupied together and where no one else was present, *that he guessed the prisoner was a hard case,* and *that he had heard that when he was in the book business at the south, on a person refusing to take a book that he had subscribed for, the prisoner drew two*

State *v.* Andrews.

*pistols and threatened to blow his brains out if he did not take it.* The communication was made without any corrupt motive, and the juror testified that he paid but little attention to it, and that it had no effect upon his mind. Held, that a verdict rendered against the prisoner ought to be set aside.

The same person had told the same story, while the case was on trial, in a stage coach, in which two of the jurors were, with others, passengers. These jurors testified that they gave but little attention to it and were not affected by it. Held, that this communication, being one which they could not avoid hearing, was not, in connection with their statement as to their attention to it and its effect upon them, a sufficient reason for setting aside the verdict.

A juror ought however never to allow himself to hear such remarks when he can avoid it; and where he can not otherwise prevent it, he ought to inform those present of his relation to the case and request them not to converse about it.

One of the jurors who sat upon the case was a second cousin, by blood, of the prisoner. The prisoner relied upon insanity as his defense, and attempted to show that insanity was hereditary in his family, and that there was a constitutional tendency to it in the common relatives of the juror and himself. The relationship between himself and the juror was not known to him at the time of the trial, but became known to the juror during the trial. Held, that the relationship of the juror in these circumstances, while it might be a proper matter for the consideration of the court, in the exercise of its discretion, if brought to its notice in season, was not to be regarded as a positive disqualification of the juror, and was not a sufficient reason for setting aside the verdict.

INDICTMENT for an assault with intent to murder. The jury found the defendant guilty, and he moved in arrest of judgment. On this motion the following facts were found. Halsey Thomas, one of the jurors in the cause, was related to the defendant, the juror's father being the defendant's first cousin. The relationship was unknown, both to the juror and to the defendant, until about the time the evidence was closed. The principal question before the jury related to the sanity of the defendant at the time of the alleged offense and previous thereto, and witnesses were examined to prove that insanity was hereditary in the defendant's family, and that there was a constitutional tendency to it in the common relatives of the defendant and the juror. During the argument of the case, the fact of the relation between the juror and the defendant became a subject of conversation between the defendant's sister and one Arnold, who was the defendant's cousin, and Arnold suggested that he would make inquiries of the juror in respect to the relation, and before the argument of the case was concluded he met the juror and remarked to him that it

seemed strange that he should have been allowed to sit in the case, as he was a relative of the defendant; to which the juror replied that that would make no difference.

While the case was on trial, one William G. Small, one of the standing jurors of the term, but not sitting in the cause, said, in the presence and hearing of one of the jurors, that he guessed the defendant was a hard case, and that he had heard that, when he was in the book business at the south, a doctor refused to take a book subscribed for, because it was not bound according to the contract, and that the defendant drew two pistols and threatened to blow the doctor's brains out if he did not take it. This was said by Small to the juror, in a bed room occupied by them together, after they had retired for the night, no others being present. Small also, while the case was on trial, told substantially the same story in a stage-coach, in which, with other passengers, were two other jurors who heard it. The jurors testified that they paid but little attention to the story, and that it had no effect upon their minds. It did not appear that Small acted corruptly, and it was not claimed by the defendant that there was any improper conduct on the part of the jurors in suffering these statements to be made in their presence and hearing. The facts were communicated to the court immediately upon their coming to the knowledge of the defendant's counsel.

Upon these facts the defendant claimed that his motion in arrest ought to prevail; but the court overruled the motion and rendered judgment against the defendant. The defendant thereupon, upon the same grounds upon which he had moved in arrest and upon the facts so found, moved for a new trial of the case.

*W. D. Shipman* and *McFarland,* in support of the motion.

1. The verdict ought to be set aside and a new trial granted, because the juror Thomas was the cousin of the defendant, and was therefore an improper person to pass upon the question of the insanity of the defendant, which was the main question on which the defense rested. 1st. Being a near relative of the defendant, he must have formed an opinion on the

State *v.* Andrews.

question of the defendant's sanity or insanity, and also of the sanity or insanity of their common relatives before the trial. 2d. One of the main facts going to prove the insanity of the defendant, was the alleged insanity of many of the common relatives of the defendant and the juror, which the defendant claimed as very strong evidence that there was an hereditary tendency in the whole family to insanity, which necessarily included the juror as well as the defendant. Upon this question the juror must have had a preconceived opinion and a very strong bias, and have been influenced by motives which appealed directly and powerfully to his interest, and to his personal and family pride. For these reasons he was disqualified to sit in the cause.

2. The communication made by the juror Small to three of the jurors sitting in the cause, especially to the juror in the bed-room, is a sufficient ground for setting aside the verdict. It was a communication of facts that might have influenced their minds against the defendant, and were peculiarly well calculated to produce that effect. Small was himself a juror, an officer of the court, and therefore in a position of confidence and influence. It is claimed that no impression was made on the minds of the jurors. But how can they know this ? The impression left by such a statement is often a very positive one, while the person who hears it is not conscious of the effect. *Harris* v. *Woodstock*, 27 Conn., 571. *State* v. *Hascall*, 6 N. Hamp., 362. *Whitney* v. *Whitman*, 5 Mass., 405. *Clark* v. *Whitaker*, 18 Conn., 549.

*Culver*, state attorney, and *Tyler*, contra.

1. The relationship between the juror Thomas and the defendant, was not, as a mere relationship, a disqualification. Rev. Stat., tit. 5, § 78. The fact that witnesses were examined to prove that insanity was hereditary in the defendant's family, and that there was a constitutional tendency to insanity in the common relatives of the defendant and the juror, is no ground for setting aside the verdict. No authority can be found in support of such a claim.

2. What Small said to one of the jurors in the bedroom, and in the presence and hearing of two other jurors in the

State *v.* Andrews.

stage-coach, especially as it does not appear to have been said by any one in the interest of the state, is not a sufficient ground for setting aside the verdict. The jurors are not charged with any improper conduct in the matter, and they testified that they paid but little attention to the story and that it had no effect upon their minds. It is expressly found too that there was no corrupt intention on the part of Small. *State* v. *Watkins*, 9 Conn., 47. *Pettibone* v. *Phelps*, 13 id., 445. *Cain* v. *Ingham*, 7 Cowen, 478.

ELLSWORTH, J. We are all satisfied that the prisoner is entitled to a new trial.

We do not attach any great importance to what was said by Small in the hearing of two of the jurors in the stage coach, for these remarks may be regarded as accidental, the hearing of which the jurors could not have avoided, situated as they were, and which in fact, as they say, they did not notice or regard. But it is otherwise with the conversation in the bed-room. That was neither accidental, unavoidable or unheeded. It was a part of a conversation, private, free and confidential, and which took place after the two jurors had retired to rest, occupying the same room, if not the same bed. They both very well knew that the question in issue on the pending trial was the condition of the prisoner's mind as to sanity and his capacity to commit the crime charged upon him. In such a case, to allow one of the jurors of the panel to listen to, if not participate in, a conversation addressed to him by a brother juror, not of the panel, in which it was stated that the prisoner on trial was a hard case, and, as the speaker had heard, had attempted the commission of a like and more barbarous offense at the south, stating the particular circumstances, without checking such freedom or silencing the speaker by reminding him that he was addressing a juror, can not possibly receive the sanction and approval of this court, unless we are prepared to remove every restraint upon jurors and allow them to be addressed as freely out of court as in.

We are aware that, under our practice of allowing jurors to go at large and unattended during the trial, they are una-

State *v.* Andrews.

voidably exposed to an occasional remark touching the matter in issue addressed to them or uttered in their hearing; but any juror who has intelligence enough to comprehend the meaning of his oath, must know that he may not listen to such remarks, but must scrupulously avoid hearing them, and if he is so situated that he can not do this he must at once state what his relation to the case is and request that nothing be said in his hearing on the subject; which, if done, will probably secure the object. But if he will not do this, and will lend a willing ear to a continued series of remarks, the verdict must, however much it is to be regretted, be set aside, and the juror, and whoever has knowingly co-operated with him in causing this violation of a juror's oath, be fined or punished. It is no slight matter to defeat or put at hazard a protracted laborious and expensive public trial. In this instance a second trial will involve the defendant and his friends, as well as the state, in great expense, besides greatly inconveniencing the numerous witnesses to be called upon, and interrupting the business if not consuming the entire term of the court.

The affidavit of the juror, that he did not act from an improper motive, is of no importance, for that is not the difficulty on which the motion in arrest is founded; nor that his mind was not essentially affected by what was told him. This he can not certainly know; he may think it is so, and after all his mind be insensibly affected. And so unsatisfactory is such a denial that some courts will not receive the juror's affidavit at all, for they say he can not know with certainty that his view of the case has not been affected. This is the law in New Hampshire. I have no doubt this juror's mind was essentially affected. The information given was direct, important in its character, and from a source which he must have regarded as trustworthy. We can see clearly that his mind might have been affected, and this is enough of itself to satisfy the rule; but I think it must in fact have been affected and greatly prejudiced.

We do not feel called upon to review the cases read from our own or the English books by counsel. They appear to us to be in harmony with the views which we have expressed,

although it would at first seem that Judge Waite, in giving the opinion of the court in *Pettibone* v. *Phelps*, (13 Conn., 450,) laid down the rule with greater latitude. But the case called for nothing of the kind, and we very much doubt whether that learned judge or either of the members of the court intended to go beyond the case then on trial.

The other point in the case, the relationship of the juror Thomas to the defendant, has not been very much relied upon by the defendant's counsel, and we think that it could not properly be. Its application to the case is placed upon the peculiar nature of the defense, but this we think can not afford a satisfactory distinction. Though it might be a proper matter to be addressed to the discretion of the court if brought to its notice in season, it is not to be regarded as a positive disqualification of the juror, and is not a sufficient reason for setting aside the verdict.

We advise that a new trial be granted.

In this opinion the other judges concurred.

New trial advised.