REUBEN E. HAMILTON *vs.* OMAR PEASE, TRUSTEE FOR THE
NORTH FAMILY OF SHAKERS IN ENFIELD.

A verdict will be set aside where a juror converses with a third person during
the trial concerning the case, especially if such conversation shows a bias
against the unsuccessful party, unless it appear that the successful party re-
ceived no benefit, and his opponent no injury, from the misconduct of the juror.

So it will be set aside in like manner, if a third person, in the interest of the suc-
cessful party in a civil case, approaches a juror with statements prejudicial to
the character of the unsuccessful party for morality and integrity.

And it will be set aside in such a case, where the successful party himself,
knowing that the juror has been approached with such statements, hands to
the juror a printed pamphlet containing evidence of their truth.

Motions in arrest of judgment are strictly motions at common law grounded on
errors apparent of record. Motions for new trials are statutory and for errors
occurring in court during the trial. Motions to set aside the verdict for mat-
ters dehors the record, and which did not occur in court on the trial, are inter-
mediate and special, though called motions in arrest in our practice. The
distinctions are practical and should be regarded.

TRESPASS on the case, for the diversion of a stream of water;
brought to the Superior Court in the county of Hartford, and
tried to the jury. After a verdict for the plaintiff the defend-
ant moved in arrest of judgment, on the ground that Reuben
P. Gage, one of the jurors, while the case was on trial had a
conversation with the plaintiff regarding the cause, and re-
ceived from him a pamphlet entitled " Shakerism Unveiled,"
which contained defamatory statements with regard to the
character of the family of Shakers which, in the name of
Omer Pease, Trustee, constituted the party defendant in the
case, which statements were directly calculated to prejudice
the jury against them; which facts were to the defendant
unknown before the rendition of the verdict. The defendant
also filed a motion that the verdict be set aside and a new
trial granted, upon the same grounds with the motion in arrest.
Upon the latter motion the court found the following facts :

The defendants are a community known as the "North
Family of Shakers," located in Enfield, in the county of Hart-
ford. In 1869, one Munger proposed to the plaintiff to join
him in printing a pamphlet concerning Shakerism, and the

plaintiff agreed to pay him $40 for one thousand copies thereof. These copies the plaintiff received in October, 1869. During the same year he deposited copies of the pamphlet at various places in Enfield and the adjoining towns, to be sold, and distributed other copies among his neighbors. A copy of the book was attached to the motions, and was found to contain a great number of statements of the strongest character against the morality of the Shakers. Reuben P. Gage was sworn as one of the jury impanneled in the case, and united in the verdict rendered.

T. W. Pease, a cousin of the plaintiff, who was introduced by him as a witness on the trial conversed with Gage during the trial, concerning the case, knowing him to be one of the jurors. He informed Gage of the existence of the pamphlet, and the nature of its contents; whereupon Gage expressed a wish to read it. Soon after, during the trial, T. W. Pease fastened a paper wrapper around a copy of the pamphlet, and handed the parcel to the plaintiff, requesting him to deliver it to Gage; and the plaintiff, believing the parcel to contain a copy of the pamphlet, delivered it to Gage during the trial. Gage read the pamphlet during the trial and before the verdict was rendered. The foregoing facts were not known to the defendants, nor to their attorneys, until after the verdict was rendered.

Upon these facts the Superior Court reserved the question as to what judgment should be rendered upon the motions.

*Eaton* and *Briscoe*, for the defendants, cited *Coster* v. *Merest*, 3 Brod. & Bing., 272; 1 Graham & Wat. on New Trials, 53; *Spenceley* v. *De Willot*, 7 East, 108; *Knight* v. *Inhabitants of Freeport*, 13 Mass., 218, 220; *McIlvaine* v. *Wilkins*, 12 N. Hamp., 475; *Cilley* v. *Bartlett*, 19 id., 312; *Bennett* v. *Howard*, 3 Day, 223; *Pettibone* v. *Phelps*, 13 Conn., 451; *Clark* v. *Whitaker*, 18 id., 543; *Hickox* v. *Parmelee*, 21 id., 86.

*Hyde*, for the plaintiff, cited 2 Graham & Wat. on New Trials, 459; *Commonwealth* v. *Burrell*, 16 Pick., 153; *State* v. *Watkins*, 9 Conn., 47; *Pettibone* v. *Phelps*, 13 id., 445,

451; *Woodruff* v. *Richardson*, 20 id., 238; *Nesmith* v. *Clinton Fire Ins. Co.*, 8 Abbott Pr. R., 141; *Fash* v. *Byrnes*, 14 id., 12; *Carlisle* v. *Town of Sheldon*, 38 Verm., 440.

BUTLER, C. J.  The finding of facts in this case discloses three elements of misconduct, either of which is a sufficient cause for setting aside the verdict within the principles settled or recognized in this court.

1.  The first is the misconduct of the juror, Gage, in con versing " concerning the case" with a person not of the jury.

In *Bennett* v. *Howard*, 3 Day, 219, a verdict was set aside because a juror had " conversed freely about the case with a person not of the jury."  In disposing of the point, the court, after reciting the facts so found, say briefly but expressively : " This was directly contrary to his oath.  To suffer such practice to obtain would be of very dangerous tendency, by opening the way to corrupt the streams of justice; and would destroy all confidence in the trial by jury."  The doctrine of that case has never been essentially departed from, but it has not been and should not be arbitrarily applied, where it is made to appear that no mischief has been done.

The court have appreciated the actual hardship of depriving an innocent party of his verdict because of the misconduct of a juror, which hardship is not counterbalanced by the possibility of hardship upon the other party, for the reason that the verdict, but for the misconduct, might have been the other way, and they have not applied the doctrine where it appeared that the successful party could not have received any benefit from the misconduct, or his opponent any injury.  Thus in *Carter* v. *Watkins* the claimed misconduct was as follows : " In the progress of the trial one Orrin Burgess testified that on the evening preceding the night of the alleged murder, the prisoner was at the house of Mrs. Burgess, and said that he was going thence to Sterry Bennett's.  The other witness testified that he came home about 8 o'clock.  After the evidence was closed on both sides, and while the audience were retiring, John C. Howard, one of the jurors, in a low voice, but so as to be heard by the clerk of the court, addressing the public

prosecutor said : ' We must have Sterry Bennett here, and you must bring him here.' The next morning, the cause being still on trial, the same juror made application publicly to the presiding judge to the same effect." The court being of opinion that the prisoner was not prejudiced, and that the motive of the juror and his fellows was simply to have the cause sifted to the bottom, in order more satisfactorily to their own minds to do public justice, did not disturb the verdict.

So too in *Pettibone* v. *Phelps*, 13 Conn., 445, where, during the trial, one of the jurors who gave the verdict said out of court to one Smith, that the trials before that court had been lengthy, and the cause on trial protracted, and Smith spoke to him of the severity with which a witness for the plaintiff had been examined, and the juror replied that a witness seldom had so rigid a cross-examination, but he bore it well, the court did not disturb the verdict. They thought it sufficiently appeared that the successful party had not been benefited or his opponent injured by the misconduct. It may be added that the conversation was not about or concerning the matters involved in the case, or the conduct or character of the parties to it.

But here, as in *Bennett* v. *Howard*, the conversation was concerning the case and the conduct and character of the unsuccessful party. It does not appear that they could not have been injured, and does expressly appear that an unfavorable impression was made upon the mind of the juror, for he expressly wished to be furnished with printed evidence of the demerit of the party. Such misconduct by a juror is clearly sufficient to set aside the verdict.

2. The second element of misconduct is that of a third person, one T. W. Pease, not on the jury but a witness in the case for the plaintiff, who approached the juror Gage and induced and held the conversation alluded to. It does not appear that the conduct of Pease was not intentional, or that his motives were not corrupt; and it is fairly inferrible from the facts that he was in the interest of the plaintiff, and that he intended to prejudice and did in fact prejudice the mind

of the juror against the defendants. In *The State* v. *Andrews*, 29 Conn., 100, one Small, a standing juror but not on the panel in the case, said to one of the panel in a bedroom occupied by them, after they had retired for the night and no others were present, that he guessed the defendant was a hard case, that he had heard that, when he was in the book business at the South, a doctor refused to take a book subscribed for because it was not bound according to contract, and that the defendant drew two pistols, threatening to blow the doctor's brains out if he did not take it. In that case the declaration related solely to the conduct and character of the defendant. The court in that case advised that the verdict be set aside with emphatic censure.

3. The third elemental fact is still more conclusive. The plaintiff himself tampered with the juror. If he did not send T. W. Pease to prejudice Gage against the defendants, which he probably did, he ratified the act and re-affirmed the declarations made by Pease, by conveying from Pease to Gage the juror the pamphlet which Pease had promised to get for him, and which was defamatory of the defendants and calculated" to affect the damages, if not the issue. In relation to such conduct this court has repeatedly spoken in the most emphatic manner. In *Pettibone* v. *Phelps* Judge WAITE said: "If indeed he (the successful party), or any agent of his, will approach a juror while the cause is on trial, and speak of the subject matter of the suit, it will destroy a verdict in his favor. He ought to know and feel that he may lose but cannot gain by such conduct. Depriving him of his verdict will operate as a punishment for his violation of the law." And where a paper calculated to affect the verdict got to the jury by mistake, the verdict was promptly set aside. Here the pamphlet was delivered to the juror, and its contents were probably made known to the other jurors, by the corrupt and disgraceful agency, direct and indirect, of the successful party, and the verdict must not be permitted to stand.

We have had some difficulty in respect to the irregular standing of the case before us. The defendants filed a motion

in arrest, and also a motion for a new trial, containing substan
tially the same averments of misconduct. The court found
the facts averred in the motions to be true, and also found
other facts connected with the transaction, in an independent
finding of facts. The facts found which were not averred
were not admissible as grounds for arrest *per se*, but the evi-
dence does not appear to have been objected to, and they may
perhaps be considered in reference to the animus of the plain-
tiff, and the probable and presumptive effects of the pamphlet
on the verdict. Connecting the facts so found with the mo-
tion for a new trial, the court asks what judgment should be
rendered on that motion. This is irregular. The misconduct
alleged and found occurred out of court, and had no immediate
connection with the trial. Motions for new trials are statu-
tory and limited to certain proceedings of the court during the
trial. They give a history of what there occurred, and if that
is a true history and within the knowledge of the court, they
are allowed by the court and import verity. They never pre-
sent an issue of fact to be tried, or conclude with a verification,
or admit of a traverse or demurrer. Motions in arrest of
judgment are of a very different character. They are not
statutory, they are common law proceedings ; they must be
filed within twenty-four hours ; must aver all the facts relied
upon, if grounded upon matters of fact *dehors* the record,
and cannot be altered or amended after the time has expired
for filing them. Strictly speaking, motions in arrest of judg-
ment are for matters appearing upon the record, and if sus-
tained judgment is arrested and a repleader is awarded or the
record amended. Motions in arrest (so called in our practice)
to set aside a verdict for matters *dehors* the record, are of an
intermediate character, and if sustained the judgment is *sus-
pended*, the verdict set aside, and a new trial had.

There are other differences between the motions, but enough
has been said to show that, without disregarding the statute
and the principles of the common law, we could not advise
that the defendants should take anything by their motion for
a new trial, if it was strictly such. But it has also all the

elements of a motion to set aside a verdict, and may be treated as such; and so considering it, the Superior Court is advised to allow it and set aside the verdict.

In this opinion the other judges concurred.