# In the Court of Common Pleas of Schuylkill County.

## SHOMO *v.* ZEIGLER.

A verdict of a jury will not be set aside for the misconduct of a juror in conversing about the cause on trial with a witness before or during the trial, when no improper influence or bias is shown, unless such misconduct was caused by a party to the suit, or his agent, or by his representations, and proof of the bias must be clear and manifest.

The general rule in Pennsylvania is that all papers given in evidence in the trial of the cause, except *depositions* are to be sent out with the jury.

A certified record of bankruptcy offered in evidence during the trial, through which the plaintiff claims the land, may be sent out with the jury, even though there are depositions attached to the proceedings relative to the bankruptcy, but immaterial to the controversy. Such depositions stand on a different footing from ordinary depositions, for the record cannot be cut up and mutilated.

It is the duty of counsel to object to papers before they are admitted to the jury-room.

Rule to show cause why a new trial should not be granted.

Opinion delivered 13 April, 1874, by

WALKER, J. There are four reasons assigned for a new trial, viz. :

1. The verdict was against the law and the evidence.

2. The court erred in its construction of the agreement of the 26th February, 1863.

3. The jury were improperly interfered with.

4. That papers were sent out with the jury that were not in evidence, to wit, the entire record in bankruptcy, including depositions that had been previously refused the defendant to use.

As to the first reason : There were disputed facts in this case, such as the defendant's possession, the wife's title, and other facts, which were properly submitted, and which the jury found. Cross *v.* Carey, 25 Ill. 562. We see nothing in this for disturbing the verdict.

2. The construction we put upon the agreement referred to, was that it was an exchange of properties, and amounted to a sale. By the terms of the agreement after performance of the covenants, and possession taken, the equitable or beneficial title passed to Zeigler, and through him by the assignee's sale to the purchaser, even though the legal title remained in Turner, and upon his death his interest under the agreement would descend to his heirs as money, if any part of the consideration remained unpaid, and *not as land*. After the execution of the agreement, Turner held the legal title to the premises as trustee for Zeigler. Garrard *v.* Lantz, 2 Jones 194 ; Morgan *v.* Scott, 2 C. 51 ; Schock *v.* Bankes, 1 Leg. Chron. 218. We think this is correct. This point has not been pressed by the learned counsel for the defence.

The third reason is improper interference with the jury.

The court *may* set aside the verdict of a jury for misconduct, and where it is prejudicial to the losing party, *will* do so. But the granting of a new trial, like the granting of a continuance, or taking off of a default

or opening a judgment, rests in the sound discretion of the court. 2 Graham & Waterman on New Trials, 43 to 50; Grey *v.* Beap, 11 Pick. 189.

In the present case, the testimony of one of the jurors is that after the cause had been closed, and before the charge of the court, he met William J. Smith, one of the plaintiff's witnesses, in the basement of the Mortimer House, and there had a conversation with him relative to the case on trial. The juror says that he don't recollect all that Smith said, but what he does recollect is, that the witness said he had lost a great deal of money by the operation, speaking of the long case. He afterwards testifies, on cross-examination, that Smith was complaining about the length of time he was kept away from his home. This is all that he can recollect. The juror admits that he commenced the conversation with Smith, and yet he says that he did not wish to talk with any one about the case. In another place he says he does not recollect what was said about the cause. The juror's evidence is unsatisfactory, confused, and conflicting. His conduct is open to censure, and must be condemned. The practice of jurors talking about causes which they may be called to determine, is not only highly reprehensible, but contemptuous, and subject to admonition. Jurymen should be *omni exceptione majores,* and, as the supreme court say, "*their minds should be as white paper*" with reference to the cause they are trying. But when a verdict is sought to be set aside, it must be on other ground; their misconduct is not, in itself, a sufficient reason for a new trial, unless occasioned by the prevailing party, or some one on his behalf, or by his arrangement (Pettibone *v* Philips, 13 Conn. 445), or there must be some bias or prejudice created, and the evidence of it should be full and clear. Stone. *v.* The State, 4 Humph. 27; Mullen *v.* Cottrell, 41 Miss. 292.

In McCausland *v.* McCausland, 1 Yeates, 372, the court held that where a juror betted on both sides of the case, and declared previously his opinion in favor of the plaintiff, though his conduct was highly censurable, no bias was shown, and the expression of opinion was a subject of challenge, and a new trial was refused. See, also, McCorkle *v.* Binns, 5 Binney 340.

In Blaine *v.* Chambers, 1 S. & R. 169, it is held, that it is gross misconduct for any person to speak to a juror, or for a juror to permit conversation concerning the cause after he is summoned and before verdict. There the brother-in-law of the lessor of plaintiff conversed with one of the jurors concerning the cause, *before and after he was sworn.* It was contended that the plaintiff was guilty of no misbehavior, and should not be affected by the misconduct of another, and that the court will not grant a new trial, *except for the misbehavior of a party.* Grovenor *v.* Fenwick, 7 Mod. 156; George *v.* Pearce, 7 Mod. 31. Judge Yeates held "*that the person who attempted to labor the jury merited the most severe punishment, as such conduct poisons the first source of justice.*" But, as the verdict was conformable to the justice of the case, a new trial was denied.

In Richter *v.* Holbrooke, 7 S. & R. 458, a verdict was set aside for improper conduct of the plaintiff with the foreman of the jury, for in such

case the court will not stop to inquire whether the juror was influenced or not. See, also, Fenten *v.* Den. 4 Harr. 76; and in Cowperthwait *v.* Jones, 2 Dallas 56, the court say when the conversation is not with the party, there must be a *reasonable* certainty that *actual and manifest injustice* is done. So a verdict will not be set aside for a juror's misconduct, unless it is prejudicial to one or the other of the parties. Crane *v.* Sayre, 1 Halsed (N. J.); Harrison *v.* Price, 22 Ind. 163 It furnishes no legal ground for disturbing a verdict that one of the jury has been tampered with, unless the act complained of be done by one·of the parties or his agent, or by his consent and management. Bishop *v.* Williamson, 2 Fairfield (Me.), 495. Verdicts ought not to be set aside on account of loose expressions of one, or even of a few of the jury thrown out casually and without being fully understood and explained. Lamb *v.* Salters, 3 Brevard 130; Steward *v.* Small, 5 Miss, 525; People *v.* Boggs, 20 Cal. 432; Hudson *v.* State, 9 Yeager 408; Shea *v.* Lawrence, 1' Allen 167; White *v.* Wood, 8 Cushing 413; Wiggens *v.* Coffin, 1 Story 1. The weight of authorities is as stated, but there are some decisions against this view. See Durfee *v.* Eveland, 8 Barb, Sup. Ct. 46. Where the jurors talked with bystanders, before rendering their verdict about the cause; that it was a lengthy suit, an expensive litigation, and about the value of the land, it was held misconduct on the part of the jurors, but not of a nature to set aside the verdict. Hager *v.* Hager, 38 Barbour 92, and authorities cited by the court. Where a juryman said to a witness of the plaintiff that "they would throw the costs upon the defendant, of course," and the witness said "they could, of course," and the verdict was for the plaintiff, on motion for a new trial it was held, that although such conduct was a violation of the juror's public duty, yet it showed no bias or prejudice, and was not sufficient to grant a new trial. McIlvaine *v.* Wilkins, 12 N. H., 474; Pettibone *v.* Philips, 13 Conn. 445. Though the rule is the same in civil and criminal trials (2 Graham & Waterman on New Trials, 416), yet more leniency is exercised in the latter. See, also, State *v.* Andrews, 29 Conn. 100; 2 Graham *v.* Waterman on New Trials, 480 to 491. As the conversation of the juror was not with the plaintiff but with his witness, and as it is admitted by the counsel for the defence that *it produced no improper influence,* it furnishes no cause for setting aside the verdict, under the authorities just cited.

4. Was there error, of which the defendant can complain, in allowing the record in bankruptcy to go out with the jury, containing some depositions relative to the bankruptcy, and which the defendant had unsuccessfully endeavored to get before the jury?

The whole record was offered and received in evidence to establish the bankruptcy of E. W. Zeigler, through whom the plaintiff claimed by deed from his assignee. This was absolutely necessary for his case.

On a former trial of this very cause, only a portion of the record was offered in evidence, and because it was not certified as full and entire, it was ruled out at the instance of the defendant, and the plaintiff suffered

a nonsuit. Now it is full and entire, and the objection is that it contains foreign matter, improper for the jury to take out with them. The record could not be divided without mutilating it, and entirely destroying its validity. There was no prayer by the defendant to expunge the foreign matter, and if there had been it is doubtful whether the court could cut up the record, and send out only a part. It must be the whole record or none. If we were to disturb the verdict for that reason, now, our rulings would not only be inconsistent but haphazard. This is our reason why the whole record is evidence. Now for the authorities: The rule in Pennsylvania is that all papers given in evidence during the trial of the cause, *except depositions*, are to be sent out with the jury. Hendel v. The Turnpike, 16 S. & R. 97; White v. Bisbing, 1 Yeates 400: Alexander v. Jameson, 5 Binney 238; Hamilton v. Glenn, 1 Barr 342; Mullen v. Morris, 2 Barr 85; Corson v. Watson, 4 Phila. Rep. 88; 1 Troubat & Haly 578; Iron & Coal Co. v. Rogers, 15 P. F. S. 416; Taylor v. Sorsby, 1 Walker 97; Odd Fellows' Hall v. Masser, 12 Harris 507; 2 Graham & Waterman on New Trials, 331 to 335. But a written statement filed during the trial should not be given in evidence or go out with the jury. Bellas v. Lloyd, 2 Watts 401; Hamilton v. Glenn, 1 Barr 340. But in the present case the depositions were attached to the record, and could not be separated, and *ex necessitate rei*, if the record be evidence at all, the jury are entitled to the whole record.

The objection that it contains foreign matter, irrelevant to the issue, is applicable to other papers. Thus, a deed having a description of the property in dispute, may also contain descriptions of other land. Books of original entries given in evidence, frequently do contain other accounts. The exemplification of a record of judgment is evidence which a jury may have, although there may be some irrelevant matter in it. Schuylkill and Dauphin v. Jones, 8 P. F. S. 304; Alcott v. Boston Steam Mill Co., 11 Cushing 91. In none of these instances is it improper for a jury to examine the papers. Where a jury, by mistake, took out with them a deposition, part of which was inadmissible, but that part was irrelevant and immaterial to the issue, it was not a sufficient ground for a new trial. Lonsdale v. Brown, 4 W. C. C. Rep. 148; 2 Wharton's Dig., 532, §881. Where the question is, as to the ownership of goods, it is no objection to admit a printed catalogue of goods to go to the jury, that certain of these had been marked by the plaintiff as his property. Stricker v. McMichael, D. C. C. P. 7 Leg. Int. 154. So, in an issue in the orphans' court to try who were heirs of John Alexander, deceased, a manuscript book found in the trunk of the deceased, was offered in evidence and allowed to go out with the jury, and it was held that there was no distinction between sealed and unsealed instruments in this respect. Alexander v. Jamieson, 5 Bin. 238. In Comth. v. Sennett, 5 Wr. 161, the schedule, statements, and affidavits not being evidence of loss, they could not be read or sent to the jury; and in The Marine Ins. Co. v. Hodgson, 6 Cranch, 206, *ex parte* depositions taken in another case were not evidence for a jury. But where a record

is given in evidence without objection to the court and jury, *it is error to refuse to permit it to go out with the jury.* Hendel *et al. v.* Turnpike Road, 16 S. & R. 92. In an action for malicious prosecution, it was held proper to send out with the jury the information made by the defendant. Gibson, Chief Justice, says : "That document was not a deposition, but an indispensable part of the case in evidence by the plaintiff himself, and as such *it does not fall within the rule which excludes a deposition from the jury-room.*" Seibert *v.* Price, 5 W. & S. 440.

In Sholly *v.* Diller, 2 Rawle, 177, it was decided that a paper purporting to be a will, and the probate and letters attached, " if they were properly admitted in evidence, they were competent for the jury to take out with them, *but were that otherwise* (the court say), *it is not a ground to disturb the verdict,* as was intimated in Alexander *v.* Jameson, 5 Binney 238, and directly decided in McCully *v.* Bair, 17 S. & R. 445." In that case, the depositions of witnesses to the will were attached to the record, and were allowed to go out with the jury.

In Spence *v.* Spence, 4 Watts 168, Chief Justice Gibson uses this language ; " Ordinarily, depositions are not sent out with the jury, because the testimony of witnesses examined at the bar cannot be sent, and to put the testimony of those examined previously on any other footing would give it an unfair advantage. But, according to Sholly *v.* Diller, 2 R. 177, *depositions taken before the register, standing not upon ordinary footing,* as was said in Ottinger *v.* Ottinger, 17 S. & R. 142, *may be sent out as part of the proceedings.*"

In addition to the authorities cited (which, in our opinion, rule this case), we would say that as there is much in the discretion of the court as to *refusal* to permit papers to go out with the jury (4 Watts 165, 1 Barr, 340, 10 Wright 389, 7 P. F. S. 142), it is the duty of counsel to draw the attention of the court at the time, to papers, records, and items in statements, that are objectionable to go out with the jury.

In Kline *v.* Gundrum, 1 Jones 253, the supreme court say : " Counsel have duties to perform, as well as courts." If this be not done when papers go out, the judgment will not be reversed. See, also, 2 Graham & Waterman on New Trials, 655 to 664 ; Terry *v.* Drabenstadt, 18 P. F. S. 404 ; Hall *v.* Rupley, 10 Barr 231 ; Maynard *v.* Fellows, 42 N. H. 255. And when a deposition was taken out with the *knowledge* of the complainant, a new trial was not granted. Shields *v.* Greffy, 9 Iowa, 322 ; State *v.* Delong, 12 Iowa 453. But what is conclusive of this matter is, that the defendant complains of error in allowing the jury to take out depositions *which he himself offered and failed to get in evidence.* This certainly was not error of which he can complain (Unangst *v.* Kraemer, 8 W. & S. 391), and the mere statement of the objection is its own refutation.

Rule discharged.