## Case No. 16,213.

### UNITED STATES v. SALENTINE.

[8 Biss. 404;[1] 11 Chi. Leg. News, 167.]

District Court, E. D. Wisconsin. Jan., 1879.

NEW TRIAL—MISCONDUCT OF JUROR.

1. A new trial will not be granted on the ground of misconduct of a juror, when it appears that the party asking for such new trial participated in and was a party to such misconduct.

[Cited in Harrington v. Worcester, L. & S. St. Ry. Co., 157 Mass. 583, 32 N. E. 957.]

2. The defendant was tried for manufacturing illicit spirits. During the progress of the trial one of the jurors, contrary to express instructions of the court, which were known to the defendant, visited the rectifying house of the latter, and was by him shown through it. Nothing was said concerning such misconduct on the part of the juror until after the close of the trial. The verdict being against the defendant, a motion was made for a new trial because of the misconduct of the juror: Held, that under the circumstances, the motion must be overruled.

3. Discussion of cases, where new trial has been granted for misconduct of jury.

The defendant [Christian Salentine] having been convicted of violation of certain provisions of the internal revenue law, a motion for new trial was made on the ground of misconduct of one of the jurors.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

G. W. Hazleton, U. S. Dist. Atty.
Murphey & Goodwin, for defendant.

DYER, District Judge. The question bearing upon the right of the defendant to a new trial arises upon the misconduct of one of the jurors while the trial of the cause was in progress. At the beginning of the trial the jury were cautioned against having any conversation with any person about the case, and against allowing any person to approach them for the purpose of having such conversation, and against permitting any conversation relating to the case to be had in their presence. The admonition was pointedly given and must have been well understood by the jury and by all parties present. At a subsequent stage of the case the defendant, through his counsel, made application for an order granting to the jury leave to visit and examine his rectifying house, where it was alleged illicit spirits had been manufactured. His application was denied, and the denial was accompanied with observations on the part of the court, which must have given the jury and all parties interested distinctly to understand that the case was to be heard and determined upon the evidence adduced in court, and that no other sources of knowledge or information were to be consulted. Nevertheless, before the conclusion of the trial, one of the jurors, without the knowledge or leave of the court, visited the rectifying house and made extensive examinations of the same in company with the defendant. The circumstance was first brought to the knowledge of the court after verdict, by affidavits of the facts made by the defendant and certain of his witnesses. Proceedings were at once taken for an investigation of the conduct of the juror, which resulted in the imposition of such punishment as the court at the time thought his misconduct warranted. This act of the offending juror has been earnestly urged as ground for a new trial.

Invoking, as counsel did in support of their view, the rule which limits the inquiry of a juror in the case he is called to hear to the evidence adduced at the trial, unless otherwise ordered by the court, and also those general principles regulating jury trials which are essential to a pure and impartial administration of justice, and impressing also upon the attention of the court the circumstance that there had been such transgression by the juror as merited, and made it the duty of the court to impose, suitable censure and punishment, my mind was at the time strongly impressed by the argument which counsel for defendant made upon this branch of the case. In testing its soundness as applicable to the case at bar, it seems essential that we look closely into the particular circumstances and facts connected with the admitted misconduct of the juror.

The material portions of the affidavit made by the defendant and presented to the court as the basis for proceedings against the juror, are as follows: "That on the 16th day of April, A. D. 1878, at or about the hour of one p. m. of said day, said Horace De Long, juryman as aforesaid, came to the rectifying house of M. J. Salentine, No. 227 Reed street, in said city, which is the rectifying house spoken of in the testimony introduced in the trial of said action, and which contains the tubs and still where the illicit distillation of spirits is alleged to have been carried on; that I saw the said De Long inside of the said rectifying house when I came to the place at said time; he then stated that he had come into the establishment to look over the same and see how things were, or words substantially and to that effect. He then asked me where the barrel of wine was lying that had been spoken of in the evidence during the trial, and I showed him the place; he asked me what the big tubs were for which stood in the rectifying house, meaning the receivers; he then said, in substance, that he wanted to go into the still and see where the mash was alleged to have been made; he then went into the still room; he looked at the dumping holes leading through the still room floor into the tubs, and said: 'That is the place where they said you made your mash,' and I said 'Yes;' he then looked at the still and the other tubs in the still room. * * * Said De Long then went into the stable connected with said premises, and asked me where the place was where the jug of liquor was hid; then the said juryman, saying that he wanted to see the place where the molasses was laid, went to the rear of the store on Virginia street, where it was proven that the molasses was stored; he looked into said store room and examined the side walls in front, and remarked that it was a poor hiding place. The said juryman then returned, as I remember, into the still, and from there the said juryman went up stairs and looked about upon the second and third floor of said establishment; he examined the iron basket of the still spoken of in testimony, and also the top of the column in the still; he and I then went back into the store."

The affidavit of the juror, made in the proceeding against him for contempt, varies in some particulars from that of the defendant, but it is in substance an admission of the alleged misconduct, and shows that the defendant participated with him in the examination of the premises, and pointed out to him various places and objects in the rectifying house referred to in the testimony. For the purposes of the pending question of a new trial, we may accept the affidavit of the defendant as giving a truthful statement of the occurrence.

The facts then being as stated by the defendant, the question is, do they entitle him to a new trial? That the rule touching the effect of misconduct of a juror upon a verdict is a strict one, cannot be denied. That it is also a salutary rule, and one to be faithfully observed as essential to the purity of jury trials, must without hesitation be admitted. The books are full of cases where the rule has been enforced. And, although there is some disagreement in the authorities on the point, I think the weight of authority is, that it is not necessary in order to justify the court in setting aside a verdict for irregular conduct of a juror, to show affirmatively that such conduct influenced the jury or affected the verdict. The misconduct of a juror, if it occurs without the knowledge or participation of the party litigant, taints the verdict; that is, provided it was of such a character that it might have had an undue influence. Says Judge Clifford in Johnson v. Root [Case No. 7,409]: "Irregularity on the part of the party charged or of the jury, must be satisfactorily proved in order to lay a foundation for the interposition of the court, but when the irregular conduct is established, it is not necessary that it should certainly appear that it influenced the jury. In that state of the case it is sufficient that the irregularity appears to be of a character that it might have affected the impartiality of the proceedings." Such was the rule laid down in Com. v. Roby, 12 Pick. 520, and it appears to be correct. In that case the court says that where there is an irregularity which may affect the impartiality of the proceedings, as where meat and drink or other refreshments have been furnished by the party, or where the jury have been exposed to the effect of such influence, as where they have improperly separated themselves or have had communications not authorized, inasmuch as there cannot be any certainty that they have not been improperly influenced, the proper and appropriate mode of correction or relief is by undoing what has thus been improperly and might have been corruptly done. Text writers have stated the rule as follows: "That whenever it seems satisfactorily to appear that the jury were influenced by improper motives, or that they acted corruptly or under restraint, and it clearly appears that a fair trial has not been had, the verdict will be set aside and a new trial granted. Any improper interference with the jurors may afford sufficient grounds for granting such a motion, and it is not necessary that the attempt to influence the jurors should be made by one of the parties, nor even by his agents. It is sufficient, if it clearly appear that it was done in his behalf, and it is never necessary to show that the misconduct controlled or determined the verdict, provided it was of a character that it might have had an undue influence." In Knight v. Inhabitants of Freeport, 13 Mass. 218, the plaintiff's son-in-law said to one of the jurors that the cause was of great conse-

quence to him; that he should have to pay the costs if the cause should go against the plaintiff, and that the defense of the action was a spiteful thing on the part of the defendants. On motion ·of defendants a new trial was granted, the court remarking that "too much care and precaution cannot be used to preserve the purity of jury trials. The attempt to influence the juror in this case was grossly improper, and ought to be discountenanced. It is not necessary to show that the mind of the juror thus tampered with was influenced by the attempt. Perhaps it is not in his power to say whether he was influenced or not. If he was, there is sufficient cause to set aside the verdict, and if he was not, and the party who has gained the verdict has a good cause, he will still be entitled to a verdict upon another trial. We cannot be too strict in guarding trials by jury from improper influence. This strictness is necessary to give due confidence to parties in the results of their causes, and every one ought to know that for any, even the least intermeddling with jurors, the verdict will always be set aside."

As illustrative of the extent to which the courts go in setting aside verdicts for improper attempts to influence jurors, the following cases are in point: Hamilton v. Pease, 38 Conn. 115; Perkins v. Knight, 2 N. H. 474; Bennett v. Howard, 3 Day, 223. See, also, Sargent v. Roberts, 1 Pick. 337; Dana v. Roberts, 1 Root, 134; Farrer v. Ohio, 2 Ohio St. 54; Riley v. State, 9 Humph. 646; Foster v. Brooks, 6 Ga. 287; State v. Andrews, 29 Conn. 100, and· many other cases which might be cited.

In this connection it may be observed that in McIlvaine v. Wilkins, 12 N. H. 474, the court, in discussing this subject, say, that "scattered throughout the reports there are far more cases than there should be of applications for new trials, founded upon evidence tending to show sometimes attempts by a party to prejudice a jury in his favor, and sometimes conduct in jurymen indicative of a forgetfulness of the important responsibilities resting upon them." And Mr. Hilliard says in his work on New Trials (Hil. New Trials, c. 10, § 11) that the weight of authority would seem now to be that conversation with jurymen, more especially, unless held when they are together, is not ground for a new trial; citing Davis v. Taylor, 2 Chit. 268; Parke's Case, 2 Rolle, 85; Hall's Case, 6 Leigh, 615; Luster v. State, 11 Humph. 169; Rowe v. State, Id. 491. Visiting the scene of the res gestæ by jurors, without permission of the court, and with a view to obtain information touching the facts of the case on trial, or for explanation of testimony, is ground for a new trial. Such, in effect, was the ruling in Eastwood v. People, 3 Park. Cr. R. 25; Ruloff v. People, 18 N. Y. 179; and Deacon v. Shreve, 22 N. J. Law, 176.

In the light of the authorities to which I have referred, and many others to which reference might be made, if it appeared in the case at bar that the juror held conversations with other parties than the defendant about the merits of the case while the trial was in progress, or visited the defendant's rectifying house for the purpose of examining the same, without defendant's knowledge or co-operation, I should have little hesitation in setting aside this verdict. The question now is, is the defendant in a position to invoke the application of the rule which gives to a party, presumably prejudiced by the misconduct of a juror, the benefit of a new trial. He had knowledge of the refusal of the court to permit the jury to visit the premises. Yet, finding the juror there while the trial was in progress, he conducted him over the premises, and, as appears by his own sworn statement, pointed out localities and objects concerning which testimony had been given. He knew that the court had forbidden the jury to have conversations with persons concerning the case, yet, according to his own affidavit, he held such conversation with the juror while accompanying him through the rectifying house. In view of what had transpired in court in his presence, and in view of the statement in his affidavit that the juror told him that he did not want any one to know he had been at the rectifying house, it is to my mind clear that the defendant knew that the conduct of the juror was a violation of his duty, and was in disregard of the orders of the court. Yet he made no report of the transaction to the court, nor even to his counsel, but sat silent and permitted the trial to proceed without complaint until after verdict when he makes complaint in the form of a motion for a new trial, on the ground that he was prejudiced by the misconduct of the juror, in which he participated, and to which he was a party.

I have examined with care all the cases cited by counsel, and many more bearing upon this question, and I have been unable to find a case in which a new trial was granted for misconduct of a juror, in which the party asking for a new trial participated. The cases in which such misconduct was held ground for a new trial were, so far as my observation extends, where the misconduct was between the juror and a third party, or between the juror and the successful party in the litigation, and of ·which the losing party was at the time ignorant, and with which he was in no manner connected. Now, although "the utmost precaution should be observed to prevent any attempt to forestall the judgment or to bias the mind of a juror in reference to the merits of an issue which he is called on to decide," and although "all trials by jury ought to be effectually guarded against the exertion of every species of improper influence," the question is, whether, when a defendant makes himself a party to the miscon-

duct of a juror, he can sit silent until verdict rendered, and then if the verdict shall be against him, can be heard to urge such misconduct as a ground for setting aside the verdict. As, for example, suppose a juror communicates a willingness to accept a bribe, and the party pays him a bribe, and the bribe proves ineffectual, and there is an adverse verdict, can the party who has thus dealt with the juror ask for the benefit of a new trial, basing his application upon the corrupt act of the juror? As I understand the rule upon this subject, it is enforced for the benefit and protection of those who are themselves innocent of any participation in the misconduct complained of. It is true that in the present case the juror's visit to these premises was not brought about, nor originally induced, by any act of the defendant. The juror was there of his own volition, and was there when the defendant first met him; but the defendant at once lent his encouragement and co-operation to the act of the juror, and, as I have said, accompanied him over the premises, pointed out different objects upon the premises to which the testimony on the trial related, and conversed with him about particular parts of the establishment which they were then mutually observing. Clearly, both parties—the juror and the defendant—were equally in flagrante delicto. For this offense against the proprieties of judicial investigation, punishment has been inflicted upon one; and now to grant a new trial because of such offense, would be to reward the other, when both are alike culpable. For I cannot but regard both as alike at fault, since the defendant, finding the juror on the premises, actively aided and facilitated him in his examination of the scene of the res gestæ. It is impossible for me to believe that the defendant supposed that the juror had a right at that time to visit and examine the establishment, and his subsequent silence touching the occurrence until after the verdict, looks strongly like a purpose, originally, not to divulge the circumstance unless the verdict should be unfavorable. By his own course of action as a participant in the misconduct of the juror, I think he has foreclosed his right to ask that the verdict be set aside because of such misconduct. No other conclusion is, in my judgment, reconcilable with a regular and proper administration of the law, and I find no authority that supports a contrary determination in such a state of the case.

Motion for a new trial denied.

NOTE. The test of prejudice to a party from misbehavior of a juror is this: Was his misbehavior such as to make it probable that his mind was influenced so as to render him an unfair and prejudiced juror? If the misbehavior appear, the disclaimer of the juror should be wholly disregarded. And it is of no importance whether or not the court thinks the verdict was right. Pool v. Railroad Co., 6 Fed. 844.