[No. 5918. Decided February 28, 1906.]

THE STATE OF WASHINGTON, *Respondent,* v. ALBERT
WILSON *et al., Appellants.*[1]

CRIMINAL LAW—LARCENY—VARIANCE—PROOF OF POSSESSION. Upon
a prosecution for the larceny of cattle running upon the range, under
Bal. Code, § 7114, providing that the possession of such cattle shall
throw upon the accused the burden of explaining such possession,
evidence that the cattle were found in the defendants' field, marked
and branded with their mark and brand, is sufficient proof posses-
sion to sustain a conviction under such section; and the fact of the
marking and branding, which is a distinct offense under the statute,
does not constitute a variance; since the same was competent upon
the question of the intention to commit the larceny charged.

TRIAL—INSTRUCTIONS. It is not error to refuse proper instruc-
tions covered in the general charge.

NEW TRIAL—JURORS—MISCONDUCT—SUFFICIENCY OF APPLICATION.
A new trial on the ground of misconduct of the jury, in that they
were influenced to render a verdict of guilty from the fact that there
had been an attempt to bribe a number of the jurymen, is properly
denied where affidavits in support of the motion contained only
hearsay statements as to the fact that the attempt at bribery was
communicated to the jury before arriving at their verdict, and where
no affidavits of the jurymen were produced, and no excuse given
except that defendants' counsel have been unable to find any juror
who was willing to make affidavits.

SAME—ATTEMPT AT BRIBING JURY—DISCLAIMER. A motion for a
new trial on the ground that an attempt had been made to bribe a
juror in the interests of the moving party is properly denied where
the moving party does not show by affidavit that he had no knowl-
edge or connection with the attempt at bribery.

Appeal from a judgment of the superior court for Thurston
county, Linn, J., entered May 25, 1905, upon a trial and
conviction of the crime of cattle stealing.  Affirmed.

*G. C. Israel,* for appellants.

*Horatio Alling,* for respondent.

HADLEY, J.—The defendants in this action were charged
jointly with the crime of stealing six head of neat cattle, the

[1]Reported in 84 Pac. 409.

property of one McCorkle, which cattle were at the time running at large upon the public range, in Thurston county. The defendants were jointly tried, and a verdict of guilty returned. A motion for new trial was denied, and judgment was entered by which each of the defendants was sentenced to three years' imprisonment in the state penitentiary. Both defendants appealed, and it is conceded that, after the appeal was perfected, the defendant Currie died. The appeal is therefore considered with reference to appellant Wilson only, and any reference to the two in the discussion will be only because of their joint relations in the cause.

It is assigned that the court erred in refusing appellants' request for an instructed verdict of acquittal at the close of the state's evidence in chief, on the ground that there was a fatal variance between the charge in the information and the proofs submitted. It is pointed out that the prosecution is based upon Bal. Code, § 7113, which provides a penalty for the larceny of neat cattle. The next section, 7114, provides that, when neat cattle are permitted by the owner to run on the range, proof of the possession of such an animal by the person accused of stealing it shall be prima facie evidence that the accused acquired possession thereof recently, and shall have the effect of throwing upon the accused person the burden of explaining such possession. It is argued that, in order to sustain a conviction under the statute upon which the information is predicated, it is incumbent upon the state to show an actual, felonious taking of the cattle by the accused, or the finding of them in his possession, in which latter event the burden is cast upon him to show that the possession was lawfully acquired. It is contended that the proof neither showed a taking of the cattle by the accused, nor that they were found in his possession, but that it tended only to establish an unlawful branding as defined by an entirely different and distinct statute, which is found in Bal. Code, § 7125.

Respondent argues that sufficient proof of possession was

made to place upon appellants the burden of explaining under the statute, and we think the evidence supports the contention. There was evidence to the effect that the cattle were found in appellants' field, and that they were marked and branded with appellants' mark and brand. The fact that they were so marked and branded was a circumstance bearing upon the question of intention to commit the larceny charged, which was proper for the consideration of the jury in that connection, and it did not necessarily show a variance from the charge of larceny because it may have tended to show that appellants were also guilty of another offense defined by statute. We think it was not error to deny the motion for an instructed verdict of acquittal.

Complaint is made that the court refused to give an instruction as requested, to the effect that, even if the jury should find that appellants took the cattle, yet if they should find from the evidence that they did so in an honest belief, although mistaken in that belief, that they had the right or authority to take them, then the verdict should be not guilty. We think the instructions given, bearing upon the question of intent, comprehended every essential idea included in appellants' request. It was therefore not error to refuse the instruction in the form requested.

The chief contention on this appeal is that the court erred in its consideration of the motion for a new trial. The circumstances shown present a somewhat anomalous situation. The motion for new trial charged misconduct of the jury in the way of receiving evidence not introduced at the trial. In support of the motion, affidavits of appellants' counsel were filed, to the following effect: That upon the return of the jury with the verdict, and immediately after the same was read and filed, one of the jurors arose in his place in the jury box and stated to the court as follows: "I want to see Your Honor in secrecy on a matter of greatest importance;" that thereupon court was adjourned, and the judge and the said juror retired to the judge's chambers, where

the two were alone for some time; that after a time the judge called the prosecuting attorney into the room, where the three were together for some time; that the prosecuting attorney then called the other jurors into the judge's chambers, where all the jurors, the judge and the prosecuting attorny remained for some time; that thereafter all the jurors came out of the room; that a juror then stated to one of the counsel that "there was no result until the thing was sprung;" that upon being asked what thing, he replied that he could not tell; that shortly afterwards one Welch was arrested upon the charge of attempting to bribe the jury.

The affidavit of another counsel states, in effect, that he conversed with a number of the jurors, and that from such conversations, and from general information received from hearsay sources, he has reason to believe, and does believe the fact to be, that after the jury retired to consider the verdict, they cast one or more ballots for the purpose of ascertaining the individual views upon the question of guilt or innocence; that such ballots resulted in certain votes in favor of guilt and others in favor of innocence; that while the jurors were in this attitude, and by reason thereof unable to agree as to the guilt or innocence of the accused, one of the jurors stated, in the hearing of the others, that he had been approached during the Sunday adjournment of the trial by one Welch with a proposition to bribe the juror to return a verdict of not guilty; that immediately thereafter, and solely by reason of said statement, all of the jurors who had previously been of the opinion that the accused were not guilty, voted for a verdict of guilty; that such were the facts reported to the judge by the juror and jurors during the above-mentioned interview; that the affiant has been unable to secure any member of the jury who is willing to make an affidavit to the facts above set forth, but that no member of the jury with whom affiant conversed has denied the truth of such facts. The motion for new trial and the affidavit of counsel gave notice that, upon the hearing of

the motion, the judge would be requested to cause to be made a part of the record a statement of all that occurred in his chambers between himself and the jurors at the time of the aforesaid consultation, and furthermore, that the court should permit the jurors to be called to the witness stand and interrogated orally concerning the facts alleged in the affidavits.

At the hearing upon the motion, the court did cause to be made a part of the record the following statement:

"Upon the coming in of the jury after the verdict had been received, the jury polled and discharged, but before the jury left the box, upon the statement of the juror Westover made from the jury box that he desired a private interview with myself as judge of this court, I retired with him into the judge's chambers and he there stated to me that it had been disclosed by three members of the jury while in the jury room that an attempt had been made by one W. M. Welsh to bribe the said three members of the jury; that the proposition submitted to them by the said Welch was in the interest of the said defendants, to wit, that they should hang the said jury, the statement of the said Westover was confirmed by the rest of the members of the said panel, but that no statement was made to me by any member of the jury as to the time when this disclosure was made—as to whether it was before arriving at a verdict or not."

Application was then made to the court on the alleged ground of inability to procure affidavits of jurors, for leave to call to the witness stand members of the jury for the purpose of showing that the statements aforesaid were made in the jury room before the jury had arrived at a verdict. The request was refused.

It will be observed that the statements in the affidavits which were filed were entirely hearsay, and were not of themselves sufficient to establish misconduct of the jury. But in view of the above statement made a part of the record by the court, and of the further statement in the affidavits that counsel had been unable to procure jurors' affidavits, it is urged that the court erred in not permitting jurors to be

called to testify orally that the alleged statements concerning attempted bribery were made in the jury room before the verdict was reached.

Our statute in relation to motions for new trials in criminal cases provides that, when application is made upon the ground here urged, the facts on which it is based shall be set out in an affidavit. Bal. Code, §§ 6965, 6966. It is urged, however, that, notwithstanding the statute, because of the unwillingness of jurors to make affidavits, the court should have resorted to oral testimony in the premises. The case of *Lax v. State* (Tex. Cr.), 79 S. W. 578, is cited. That case included features much like those in the case at bar, and it was held that the court should have forced the attendance of jurors and required them to testify as to what had occurred in the jury room. Reference to the Texas statutes however, discloses the following:

"The state may take issue with the defendant upon the truth of the causes set forth in the motion for a new trial, and in such case the judge shall hear evidence by affidavit or otherwise, and determine the issue." Willson, Texas Crim. Stats., title 9, chap. 1, § 2553, art. 781.

It thus appears that the Texas statute expressly provides that, upon motion for new trial the judge shall hear evidence "by affidavit or otherwise." Our statute is equally explicit that the facts shall be set forth in an affidavit, and no other method of bringing the facts before the court is provided by our statute.

If it should be even conceded that such extreme exigencies might arise in a case as would seem to justify the court in resorting to compulsory process to procure oral testimony of jurors upon a motion for new trial, it should certainly be a case where it clearly appears that the method provided by statute is impossible. Respondent contends that such does not appear in the case at bar, and that the affidavits of counsel do not disclose an exhaustive and diligent effort to pro-

cure the affidavits of jurors so as to produce the evidence as required by our law. The affidavit states the following:

"I have been unable to secure any member of said jury who is willing to make an affidavit to the facts herein set forth, but no member of the said jury that I have conversed with has denied the truth of the facts above set forth."

The affidavit does not state that any juror absolutely refused to make an affidavit, but only that the affiant has been unable to find any one who is *willing* to make it. A juror might not be willing, as a voluntary matter, to make an affidavit, and yet from a sense of duty he might not absolutely decline to do so. Moreover, the affidavits disclose that all the jurors must have had knowledge of the statement alleged to have been made in the jury room, but it is neither shown that all the jurors were requested to make affidavits, nor that they refused to do so. The language of counsel's affidavit indicates that he had conversed with only a portion of the jurors upon the subject. We therefore think it does not sufficiently appear that it was impossible to procure affidavits of jurors and thereby comply with the statutory requirement that, on motion for new trial, "the facts on which it is based shall be set out in an affidavit."

Respondent further urges that the accused should not have been heard to ask for a new trial on the ground of misconduct of the jury, as alleged, until they had at least disclaimed any connection with, or knowledge of, the alleged attempted bribery. The showing made in behalf of accused expressly states that the statement made in the jury room as to attempted bribery charged that it was in the interest of the accused. There is, however, no statement that any such attempted bribery, if there was such, was without the knowledge, consent, authority, or connivance of the accused. The criticized conduct of the jury was directly traceable to the charge that there was an attempted bribery in behalf of the accused, and before the latter should have been permitted to take advantage of such a situation upon motion for new trial, they should at

least have submitted their own sworn statement that they
were in no way connected with the alleged facts and circum-
stances which led to the conduct of the jury.   It is generally
held that, where prejudice has resulted to an unsuccessful
party from the misconduct of the jury, he is entitled to have
the verdict set aside, provided he was not concerned in such
misconduct.   12 Ency. Plead. & Prac., 549, and cases cited.
One must show innocence and want of timely knowledge of
the circumstances attending the alleged misconduct to entitle
him to relief.   *Cogswell v. State,* 49 Ga. 103; *State v. Nash
& Barnett,* 45 La. Ann. 1137; *Clough v. State,* 7 Neb. 320.
If the complaining party participates in the misconduct, re-
lief by new trial will not be granted.   *United States v. Salen-
tine,* 8 Bissell 404.   The court in that case made the follow-
ing pertinent remark:

"As, for example, suppose a juror communicates a willing-
ness to accept a bribe, and the party pays him a bribe, and
the bribe proves ineffectual, and there is an adverse verdict,
can the party who has thus dealt with the juror ask for the
benefit of a new trial, basing his application upon the cor-
rupt act of the juror?   As I understand the rule upon this
subject, it is enforced for the benefit and protection of those
who are themselves innocent of any participation in the mis-
conduct complained of."

To have entitled the accused to relief, the court should, in
any event, have had before it their affidavits that they had
neither knowledge of, nor connection with, the peculiar cir-
cumstances which are alleged to have led to the misconduct.

For the foregoing reasons, we believe the court did not
err, and the judgment is affirmed.

MOUNT, C. J., DUNBAR, CROW, and FULLERTON, JJ., con-
cur.