[No. 9753. Department Two. October 28, 1911.]

HULDA WALGRAF *et al.*, *Appellants*, v. WILKESON COAL & COKE COMPANY, *Respondent.*[1]

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE. An order granting a new trial for newly discovered evidence will not be disturbed on appeal where no abuse of discretion is shown, but on the contrary it appears that due diligence was used to discover the only eyewitness to the accident, and her whereabouts was not ascertained until too late to produce her at the trial, when a continuance was immediately requested.

Appeal from an order of the superior court for Pierce county, Easterday, J., entered April 28, 1911, granting a new trial, after the verdict of a jury rendered in favor of the plaintiffs, in an action for wrongful death. Affirmed.

*Rickabaugh & McElroy* and *Stevenson & Sorley*, for appellants.

*Hudson, Holt & Harmon*, for respondent.

CROW, J.—This action was commenced by Hulda Walgraf, personally and as guardian *ad litem* for John Walgraf, Susie Walgraf, Marie Walgraf, and Frank Walgraf, minors, against Wilkeson Coal & Coke Company, a corporation, to recover damages for the death of John Walgraf, husband and father of the plaintiffs. Plaintiffs alleged John Walgraf was an employee of the defendant, and that on March 31, 1910, the defendant, by its negligent acts, caused one of its

[1]Reported in 118 Pac. 343.

cars to run over and kill him.   A verdict was returned in plaintiffs' favor.   On defendant's motion, a new trial was granted, and the plaintiffs have appealed.

The order granting the new trial in effect states it should be, and was, granted on the sole ground of newly discovered evidence.   The motion was supported and resisted by affidavits, from which the following facts appear:   At the time of the trial, respondent had been, and was, unable to produce any witness who saw the accident causing Walgraf's death. Just about the time respondent completed the introduction of evidence, its counsel learned by telephone of the possibility of producing such a witness.   He immediately asked a continuance, which was denied.   After trial, and in support of its motion, respondent, by affidavits, made it appear that, at the time of the accident, an Assyrian peddler, a woman, who was passing by, happened to observe it; that being frightened, she went to a near-by boarding house, where she mentioned the incident, but immediately left Wilkeson, the town where the accident occurred; that after the trial she was finally located at Black Diamond; that shortly after the accident, respondent's attorneys heard a rumor to the effect that some woman had witnessed it; that respondent's attorney immediately spoke to a Mr. Lee, a Mr. Harris, and one Morris concerning the matter, and with their assistance endeavored to ascertain the truth of the rumor and locate the woman; that Mr. Harris was respondent's superintendent; that Mr. Lee, a former superintendent, was then operating a coal mine near Wilkeson; that each of them diligently endeavored to locate the woman prior to the trial, but failed to do so; that later respondent's attorneys employed one Mitchell, whom on different occasions it sent to Wilkeson for the express purpose of learning whether any one had seen the accident, and if so to ascertain such person's name and identity, and especially to find the woman mentioned in the rumor.

In his affidavit Mr. Mitchell stated he went to numerous houses at and near the scene of the accident; that he talked

with the occupants, but was unable to obtain any clue or trace the source of the rumor; that finally it was suggested to him a certain Assyrian peddler might be the person wanted; that he went to see the peddler then mentioned, but found she was not the person, and that she was not in Wilkeson at the time of the accident; that other efforts of a like nature were made; that during the trial Mr. Lee, who had been a witness, returned to Wilkeson; that after he reached home, it occurred to him one Mrs. Carlson, who kept a boarding house, might possibly know something about the woman; that he interviewed her, and learned sufficient to advise him of the fact that the accident had been witnessed by a woman peddler whose name and address might be obtained in Seattle; that this clue was first obtained about nine o'clock p. m. preceding the last day of the trial; that he immediately telephoned to respondent's counsel, who promptly dispatched parties to Seattle to find the witness, and on the next day asked the continuance; and that the witness was found after the trial. The witness is a woman peddler other than the one first found. It appears from her affidavit that she saw a man start to cross the track in front of some freight cars, that he fell on the track and the car ran over and killed him. That man was Walgraf. She is the only eyewitness by whom the respondent can show the manner in which the accident occurred, but her name, identity and locality were not learned before the trial, although due diligence had been exercised.

A mere statement of these facts is sufficient to sustain the order. The granting or refusing of a new trial ordinarily rests in the sound discretion of the trial judge, and his action will not be disturbed unless an abuse of discretion is shown. In *Reeder v. Traders' Nat. Bank*, 28 Wash. 139, 68 Pac. 461, this court reversed an order granting a new trial on the grounds of surprise and newly discovered evidence; but in that case the moving party had not asked a continuance, nor did it show diligence in obtaining the alleged newly dis-

covered evidence. Here the respondent moved for a con-. tinuance, and also exercised due diligence. A much stronger showing of an abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying a new trial. The record shows the respondent exercised due diligence; that the newly discovered evidence is of vital im- portance to respondent; that it is material and not cumula- tive; and that the new trial was properly granted.

The judgment is affirmed.

DUNBAR, C. J., CHADWICK, ELLIS, and MORRIS, JJ., concur.