[No. 25777. *En Banc.* August 10, 1936.]

CARL MATHISEN *et al., Appellants,* v. LINZY L. NORTON, *as Chief of Police of the City of Seattle, et al., Respondents.*[1]

[1]Reported in 60 P. (2d) 1.

*Ballinger, Clark, Mathewson & Force,* for appellants.

*A. C. Van Soelen, Walter L. Baumgartner,* and *Jno. A. Homer,* for respondents.

STEINERT, J.—This is an appeal from an order granting a new trial after verdict of the jury in favor of each of the plaintiffs in a joint action for damages for assault.

The evidence taken at the trial is not before us, and we are not called upon to determine the merits of the main controversy between the parties to the action. The record brought here is on the motion for new trial and relates only to a limited phase of the case. The respective claims of the parties, however, are presented in the pleadings.

The allegations of the complaint may be summarized as follows: On October 25, 1932, defendant Linzy L. Norton was the chief of police of the city of Seattle, defendants C. S. Stanhope and O. L. Cameron were police officers, and defendant Hartford Accident and Indemnity Company, a corporation, was surety on the bond of Norton. On that day, according to the complaint, officers Stanhope and Cameron unlawfully, and without cause, arrested the plaintiffs and at the same

time gave them severe beatings, resulting in the injuries for which the joint action was subsequently brought.

The defendants in their answers denied the allegations of the complaint respecting the beatings and affirmatively alleged that the arrests were made for violations of the provisions of a certain city ordinance, and that no more force was used by the officers than was reasonably necessary in order to make the arrests. By way of cross-complaint, one of the officers alleged that, at the time of the arrests, the plaintiffs assaulted him, doing him serious injury, for which he sought recovery from the plaintiffs. The allegations of the affirmative defense and of the cross-complaint were denied in the reply.

Upon a trial by jury, a verdict was rendered awarding each of the plaintiffs the sum of one thousand dollars. Ten of the jurors voted in favor of the verdict, and two of them voted against it. Defendants joined in a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial, the latter motion being based on all the statutory grounds. The first of these motions was denied, and the second, the motion for new trial, was granted on a specific ground recited in the granting order but was denied on all other grounds.

The facts giving rise to the particular matter before us are these: On the day following the rendition of the verdict, two of the jurors who had sat in the trial met in a corridor of the County-City Building, wherein the superior court holds its sessions, and had a conversation relative to the case. One of these jurors was John T. Copeland, who had voted in favor of the verdict; the other juror was R. O. Burnett, who had voted against it.

After the conversation, Burnett went to the trial

judge and reported what, according to his statement, Copeland had said to him. The judge thereupon sent Burnett to defendants' attorney, to whom Burnett made a similar statement. An affidavit was then prepared by the attorney and, after being signed by Burnett, was filed in support of the motion for new trial. The affidavit recited that Copeland had made the following statement, in substance, to Burnett:

"I know those fellows (Stanhope and Cameron); those God damn cops were drunk. I have relatives or friends that work over at the police station and they all say that Stanhope and Cameron are —— —— —— (using vile and indecent terms describing said officers, from which no implication could be drawn but that they were bad characters)."

In response to the affidavit of Burnett, Copeland made a controverting affidavit which was filed and in which Copeland alleged:

"That said quotation is incorrect and affiant did not make said statements, and positively denies the same were made actually or in substance whatsoever by affiant, and affiant is positive that the defendants could and did receive a fair trial in the above case and from affiant as a juror therein."

A hearing was subsequently had before the trial court on the motion for new trial, at which time the two affidavits were read. At the conclusion of the argument of counsel, the judge indicated that he believed the statement of the juror Burnett and that he would grant the motion for new trial. The plaintiffs thereupon requested an opportunity to have the two jurors brought in person before the court to give their testimony, to be considered on the disposition of the motion. The request was granted. The jurors were called and testified at some length, but substantially in accordance with the allegations made in their affidavits. The court in its decision made a finding that

juror Copeland had a biased and prejudiced attitude in the trial and thereupon entered the order granting a new trial, from which this appeal was taken.

It appears from the statement of facts that, at the time of impaneling the jury, the court propounded a number of questions to that body as a whole and asked that responses be made by a show of hands. The court inquired of the jury whether any member thereof knew any of the officers or anything about the case, or whether any of them knew of any reason why he could not sit as a fair and impartial juror therein. Juror Copeland did not respond. Appellants' counsel then interrogated the jury generally as to their acquaintance with any of the parties and also concerning any prejudice or partiality that any juror might have; counsel likewise asked for a show of hands in response to his questions. Juror Copeland made no response. Respondents' counsel then addressed additional specific questions to Juror Copeland, which were answered, as follows:

"Q. Do you have any prejudice against police officers? A. No, sir. Q. Would you accord to their testimony the same weight that you would to a person in any other position or profession? A. Yes, sir.''

■ In considering the procedure taken by counsel and the action followed by the court, it will be observed that the motion for new trial was disposed of, ultimately, not merely upon affidavits, but upon testimony. The order was based on a controverted question of fact arising out of evidence taken by the respective parties. In such cases, the ruling of the court will not be disturbed in the absence of a showing of abuse of discretion.

"The granting of a new trial upon controverted questions of fact is so largely a matter of discretion with the trial judge that his ruling thereon will seldom

be disturbed, and then only when there is evidence in the record of an abuse of such discretion." *State v. Welty,* 65 Wash. 244, 257, 118 Pac. 9.

See, also, *Kenway v. Hoffman,* 51 Wash. 105, 98 Pac. 98; *Aboltin v. Heney,* 62 Wash. 65, 113 Pac. 245; *Danielson v. Carstens Packing Co.,* 115 Wash. 516, 197 Pac. 617; *Norland v. Peterson,* 169 Wash. 380, 13 P. (2d) 483.

Ordinarily, a much stronger showing of an abuse of discretion is required to set aside an order granting a new trial than one denying a new trial. *Walgraf v. Wilkeson Coal & Coke Co.,* 65 Wash. 464, 118 Pac. 343; *McKay v. General Accident, Fire & Life Assur. Corp.,* 163 Wash. 92, 299 Pac. 987; *Ahrens v. Anderson,* 186 Wash. 182, 57 P. (2d) 410.

The state constitution provides that the right of trial by jury shall remain inviolate. Art. I, § 21. The jury is, in a sense, a branch of the judiciary, and a jury, when accepted, becomes a part of the court. *State v. Pepoon,* 62 Wash. 635, 114 Pac. 449; *Clark v. United States,* 289 U. S. 1, 53 S. Ct. 465, 77 L. Ed. 993. The jury must necessarily act as a unit, and the misconduct of any juror, actual or implied, which forestalls or prevents a fair and proper consideration of the case is the misconduct of the jury and vitiates the verdict.

"The right to trial by jury includes the right to an unbiased and unprejudiced jury, and a trial by a jury, one or more of whose members is biased or prejudiced, is not a constitutional trial." *Alexson v. Pierce County,* 186 Wash. 188, 57 P. (2d) 318.

We are conviced that there was no abuse of discretion in the action of the court. The question presented to it was whether the juror Copeland was of a biased and prejudiced mind when he entered upon the trial. The evidence was sufficient to justify a finding that he was, and the court found to that effect.

246

■ Appellants contend, however, that to uphold the order granting a new trial is to permit a juror to impeach his verdict. With this contention, we do not agree. It is undoubtedly the rule that a juror may not impeach his own verdict, that is to say, he may not divulge what considerations entered into his deliberations or controlled his actions. But matters that do not inhere in the verdict are not subject to that rule. We have a number of times held that it is competent to show the facts in relation to the misconduct of a juror but not to show the effect of such misconduct on other jurors, the latter question being one for the court to determine from the facts. *State v. Parker,* 25 Wash. 405, 65 Pac. 776; *Maryland Casualty Co. v. Seattle Electric Co.,* 75 Wash. 430, 134 Pac. 1097; *Lyberg v. Holz,* 145 Wash. 316, 259 Pac. 1087; *Taylor v. Kitsap County Transportation Co.,* 158 Wash. 404, 290 Pac. 996; *Hamilton v. Snyder,* 182 Wash. 688, 48 P. (2d) 245.

The affidavit of juror Burnett related to declarations of juror Copeland evidencing that the latter was of a biased and prejudiced mind, thus rendering him incompetent to serve. The record shows that the juror failed to disclose the fact of bias upon his examination *voir dire.* Evidence of such fact being thereafter adduced, the court was entitled to find therefrom that the juror had been guilty of misconduct. The misconduct cannot be said to inhere in the verdict, but, rather, to render the verdict wholly abortive.

■ Some contention is also made by the appellants to the effect that the claim of bias and prejudice was based on hearsay. We do not agree with this contention. The affidavit of juror Burnett related directly to statements made by juror Copeland and, of itself, made a *prima facie* showing of bias and prejudice on the part of Copeland. The affidavit was controverted,

and an issue of fact was thereby raised. Thereafter, testimony was taken, and the fact was found by the court. The hearsay rule does not apply because the reason for its application in this instance is wanting. The court did not rest its decision upon unsworn testimony or upon statements incapable of being tested by the usual methods, but rested it upon sworn testimony taken on an issue of fact.

■ There is one other question in the case, that is, whether it was necessary, under the law, for respondents to make an affirmative showing that they and their counsel did not know of the disqualifying fact of prejudice on the part of the particular juror at the time that he was accepted. Appellants contend that it was necessary to make such showing, while respondents contend to the contrary.

It is the general rule that, when a party moves for a new trial on the ground of misconduct or disqualification of a juror which results to his prejudice, he must show that, at the time that the juror was accepted and sworn for trial, neither the movant nor his counsel knew, or by the exercise of reasonable diligence could have learned, of such misconduct or disqualification. *State v. Wilson,* 42 Wash. 56, 84 Pac. 409; *Brown v. State,* 60 Miss. 447; *State v. Morrison,* 67 Kan. 144, 72 Pac. 554; *Sherwin v. Southern Pac. Co.,* 168 Cal. 722, 145 Pac. 92; *Burdette v. Goldenburg,* 87 W. Va. 32, 104 S. E. 270; 1 Thompson on Trials (2d ed.), p. 134.

There is good reason for this rule. To indulge a practice of granting new trials on the grounds of misconduct or disqualification of a juror discovered after verdict may, through abuse, readily tend to cause perjury and impede public justice. Hence, applications on such grounds are received with great caution and

are safeguarded with such requirements as will minimize their danger.

If, in this case, the matter had been finally presented solely upon the affidavits, the court would have been warranted in denying the motion on the ground that neither it nor the affidavit in support thereof showed a lack of knowledge on the part of the movant of the disqualification of the juror, in accordance with the rule above stated.

But that was not the situation presented to the court at the time that it made its final decision. An issue of fact had been raised by the appellants, and a hearing on oral testimony was granted at their request. Moreover, so far as the record discloses, no question was raised by appellants as to the insufficiency of respondents' motion or affidavit in failing to show lack of knowledge of the disqualification. To the contrary, the court was invited to hear, and did hear, the evidence, and it will be assumed that it noted the demeanor of the witnesses and thereupon exercised its sound discretion, which it had the right to do. By submitting the matter to the court as a question of fact upon a single issue, the appellants waived any objection to the sufficiency of the motion and affidavit.

In conformity with the general rule already stated, the granting or denying of a motion for new trial on the ground of alleged misconduct of the jury is a matter within the discretion of the trial court, and unless it clearly appears on appeal that the court has abused its discretion or that there has been palpable error, the action of the trial court will not be disturbed. *State v. Adamo,* 128 Wash. 419, 223 Pac. 9; *Lehman v. Hoquiam,* 144 Wash. 181, 257 Pac. 388; *State v. Robidou,* 20 N. D. 518, 128 N. W. 1124, Ann. Cas. 1912D, 1015, with full note appearing on page 1018 *et seq.*

When a juror takes an oath to answer truthfully the questions touching his qualifications to serve as such, the parties have a right to rely upon his sworn statements, and they waive nothing by accepting him as a juror. *Heasley v. Nichols,* 38 Wash. 485, 80 Pac. 769. If this were not so, then litigants could never have any assurance of a fair and impartial trial.

Under the issue and evidence in this case, as disclosed by the record, the court had the right to find the fact as to the juror's disqualification and also to presume, in the absence of any question or showing to the contrary, that neither the respondents nor their attorney had any knowledge of such disqualification prior to the time of the verdict.

Affirmed.

MILLARD, C. J., MITCHELL, TOLMAN, HOLCOMB, BEALS, and GERAGHTY, JJ., concur.

MAIN, J. (dissenting)—As I view it, there is no question of discretion in this case. The question is purely one of law, and that is, whether the showing of the respondents, on their motion for new trial, after a verdict had been returned against them, was sufficient as a matter of law.

I am in accord with the rule stated in the majority opinion that, where a party moves for a new trial on the ground of claimed misconduct or disqualification of a juror, which was discovered after verdict, he must show that, at the time the juror was accepted and sworn for trial, neither the movant nor his counsel knew, or by the exercise of reasonable diligence could have learned, of such misconduct or disqualification prior to the rendition of the verdict. If that rule is departed from, the stability of jury trials will be very much impaired. It will throw the door open to abuse and a temptation to perjury.

It is said, however, that the appellants in this case, by their conduct, waived that rule, and are not now entitled to invoke it. Waiver is the intentional relinquishment of a known right. Before there can be a waiver, there must be an intention to relinquish. This intention may be either express or implied. Before there can be an implied waiver, there must be conduct such as warrants an inference of relinquishment. 27 R. C. L. 904; 67 C. J. pp. 288 and 297.

There is in this case, definitely, no express waiver, and it is equally clear that there was no implied waiver. A day or two after the verdict was returned, two jurors met, and one who was not in accord with the verdict says that the other there made derogatory remarks relative to the respondents. The respondents moved for a new trial, and supported their motion by an affidavit of the juror who said that the other one made the remarks. The accused juror, by affidavit, unequivocally denied having said the things he was charged with saying. The motion came on for hearing before the court, and, after the affidavits were read, the court indicated that it would accept the affidavit of the juror saying that the other juror had made certain statements relative to the respondents in the conversation referred to. The appellants thereupon asked the court to call the two jurors and take their testimony in court, which was done. After this, the court granted the motion for new trial.

The fact that the appellants asked the court to take the testimony of the two jurors orally cannot amount to an implied waiver to raise the question as to the sufficiency of the respondents' showing, as a matter of law. There being no showing that neither the respondents nor their counsel knew of the disqualification of the accused juror prior to the verdict, there was no duty resting upon the appellants to inform the

respondents what the law was. The motion was that of the respondents, and they had the affirmative of the issue. The appellants denied that the juror accused had said what he was charged with saying.

Asking the court to take the testimony orally upon this issue, cannot possibly, as I view it, amount to a waiver. The parties were dealing at arm's length. There is no rule of law or practice, so far as I am aware, that requires one party to a lawsuit, when defending an affirmative charge of the other, to inform that other as to what his showing should be in order to meet the requirements of the law, and, in failing in that, be held to have waived the right to say that the showing was not sufficient, as a matter of law.

For the reasons stated, I am not in accord with the opinion to the extent that it holds that there was a waiver.

Neither am I in accord with the opinion wherein it says that the court had the right to presume, in the absence of any question or showing to the contrary, that neither the respondents nor their attorney had any knowledge of the disqualification prior to the time of the verdict. If there was an implied waiver in this case, and there is the presumption just mentioned, the rule that there must be an affirmative showing that neither the makers of the motion nor their counsel knew of the disqualification prior to verdict will be practically destroyed.

I therefore dissent.

BLAKE, J., concurs with MAIN, J.