[No. 29515. Department One. April 26, 1945.]

SUN LIFE ASSURANCE COMPANY OF CANADA, *Appellant*, v. ERNEST F. CUSHMAN *et al.*, *Respondents.*[1]

[1]Reported in 158 P. (2d) 101.

*Eggerman, Rosling & Williams,* for appellant.

*J. L. Rucker* and *O. D. Anderson,* for respondents.

JEFFERS, J.—This is an appeal by plaintiff, Sun Life Assurance Company of Canada, hereinafter referred to as appellant, from an order granting a new trial to defendants, Ernest F. Cushman and wife, who will hereinafter be referred to as respondents. The order recites that the motion for new trial was granted upon the specific ground of misconduct of the appellant and of the jury. While the merits of the action are not involved in this appeal, but only questions pertaining to the order granting a new trial, we are of the opinion that, in order to get a picture of just what happened, a somewhat extended statement will be necessary, incorporating therein the affidavits both in support of and opposed to the motion.

Respondents, in their brief, state that they are satisfied with appellant's statement of the case except that, whereas appellant has set out only a part of the affidavit of J. L. Rucker, one of the attorneys for respondents, all of the affidavit should have been included. In view of this, we adopt generally the statement as made by appellant in its brief.

The action was instituted by appellant against respondents to reform a certain policy of life insurance issued by appellant to respondent Ernest Cushman. The policy was issued without a medical examination and in reliance upon the correctness of certain answers made by Cushman as to his health and medical history, which were set forth in the application for the policy. The appellant contends that the answers of Cushman to the questions regarding his insurability are false and were knowingly made by him for the purpose of deceiving and misleading the company into issuing the policy covered by the application.

The case was tried to the court and jury, and, on the third day of trial, a unanimous verdict was returned by the jury in favor of appellant. Respondents then filed a motion for judgment notwithstanding the verdict, and, in the alternative, for a new trial, naming nearly all the statutory grounds. The trial court denied the motion for judgment notwithstanding the verdict, but granted the motion for a new trial upon the specific ground of "miscon-

duct of the plaintiff and of the jury." This appeal is from the order granting a new trial, which was entered on August 6, 1944.

Four affidavits were filed, one in support of the motion and three in opposition. The affidavit in support of the motion is by J. L. Rucker, attorney for respondents, and the three in opposition thereto are by Guy J. Gay, branch manager of appellant and a witness at the trial, W. N. Dow, a juror, and Donna Marjorie Dow, the juror's daughter. These affidavits are all set forth in the statement of facts.

The trial started on Monday morning, March 27, 1944, and the introduction of evidence was concluded at the close of trial on the following day, Tuesday. All that remained for Wednesday morning was the reading of instructions to the jury and the arguments of counsel. When the case was called for trial on Monday morning, three young girls were present, sitting at one of the three tables provided for counsel and the litigants. The remaining two tables were occupied, one by counsel for appellant and Mr. Gay, and the other by counsel for respondents and the respondents. The girls each had an opened stenographic notebook, each was supplied with a number of pencils, and it was obvious that they were in court for the purpose of testing their proficiency at taking shorthand notes. They sat through both days of testimony, taking down the proceedings, except that one of the girls left during the second day. During a recess of the second day of trial, Mr. Gay approached the table where the three girls were sitting and spoke to them. As to what took place during this conversation, we quote from the uncontradicted affidavit of Mr. Gay:

"Guy Gay, being first duly sworn upon oath, deposes and says: That he is the branch manager of Sun Life Assurance Co. of Canada, plaintiff in the above entitled proceeding; that he is a resident of Seattle, Washington, and attended the trial of this action on March 26 and 27, 1944. That during the second day of the trial, three young girls occupied a table in the court room with stenographic notebooks and commenced to take down the court room proceedings in shorthand. The girls were obviously there for

practice and to test their shorthand proficiency. That affiant was not acquainted with any of these girls and had not met or ever seen any one of them before. That during the recess, affiant approached the table where all three girls were sitting and inquired how they were getting on. They replied that they were getting on very well, and affiant remarked that if they could take down court room proceedings they would have no trouble whatever in obtaining a stenographic position. Affiant then asked them when they would be out of school and their ages, and each replied that she graduates from high school in June of 1944, and each was eighteen years old. Affiant then stated that if, upon their graduation, the girls desired to obtain stenographic positions in Seattle and would contact him, he would be glad to assist them in obtaining positions. Affiant also stated that he was in need of stenographic help in his office. Affiant left his business card on the table where the three girls were sitting and stated that if they wished to come to Seattle he would be glad to have them contact him. Affiant further stated that they should not consider coming to Seattle unless they had relatives or friends in Seattle with whom they could live as living quarters in Seattle were so scarce that they should not consider coming to Seattle unless they were assured of a place to live. Affiant did not inquire the names of any one of the girls and had no further conversation with them. If it is a fact that one of these girls was the daughter of Juror No. 2, W. N. Dow, affiant had no knowledge of such fact; that affiant had no intention whatever of tampering with the jury and if he had known of the relationship between one of these girls and a member of the jury, he would not have carried on the foregoing conversation with them.

"Affiant further states that it is a fact that his office is shorthanded, and it is nearly impossible to obtain stenographic help in Seattle, as employment is now handled through the U. S. Employment Service, and available candidates are directed by the U. S. E. S. to essential war industries. For this reason, affiant has adopted the practice, when visiting cities other than Seattle, to contact the high schools and business colleges to learn if prospective graduates are planning to come to Seattle, as it is only from areas outside the Seattle Critical Labor Area that new stenographic help can be obtained.

"Affiant further states that his conversation with these three girls was directed to the three of them and not to

any particular one; that he did not ask for their names and was entirely unaware of any relationship that may have existed between any one of them and any of the jurors. Affiant further stated to the three girls that if any one of them knew of a high school classmate who wanted to come to work in Seattle to give that person affiant's name and address."

It subsequently developed that one of the girls is named Donna Marjorie Dow, and that she is the daughter of W. N. Dow, juror No. 2. Miss Dow's affidavit is as follows:

"Donna Marjorie Dow, being first duly sworn, on oath deposes and says: That she has read the affidavit of J. L. Rucker, dated March 30, 1944, and the answering affidavit of Guy Gay, dated March 31, 1944. Affiant was one of the three girls referred to in said affidavit. The statements contained in Mr. Gay's affidavit are, correct, except that there were only two of us present at the time Mr. Gay approached us with the offer of a position, and with the exception of the statement that we were about to graduate from high school in June of 1944. We had graduated from high school last June, and are now attending business college in Mount Vernon and will graduate this coming June. Mr. Gay laid his business card on the table before us and stated that if we wished to come to Seattle in June that he would have a position available in his own office. Affiant did not disclose her name to Mr. Gay and he did not ask for it, and affiant is sure that Mr. Gay was not aware of the fact that she was the daughter of Juror W. N. Dow."

On Wednesday morning, before court convened for the reading of instructions, Mr. Dow approached Mr. Rosling, attorney for appellant, and Mr. Rucker, attorney for respondents, who were standing together talking, and the following conversation took place, as quoted from the affidavit of Mr. Rucker:

"J. L. Rucker, being first duly sworn, on oath, deposes and says: That he is one of the attorneys for the above named defendants, and makes this affidavit for and on defendants' behalf and in support of defendants' motion for a New Trial in the within action; that the trial of said action was commenced on Monday, March 27, 1944, and that said trial was concluded on Wednesday, March 29, 1944; that the only officer or agent of the plaintiff, who was

in attendance at said trial, was Mr. Guy Gay, the branch manager of said plaintiff insurance company; that the said Guy Gay was in attendance at said trial on March 27, 1944, and on March 28, 1944, and during said time sat at the counsel table where he was in constant consultation with plaintiff's attorney; that on March 28, 1944, the said Guy Gay was called to and did testify, in said action, on behalf of the plaintiff; that he and one other were the only witnesses called by plaintiff; that prior to the opening of Court, on March 29, 1944, juror No. 2, in said action, whose name was W. N. Dow, approached Mr. Rosling, attorney for the above named plaintiff, and in affiant's presence asked Mr. Rosling if Mr. Gay would be in attendance that day; that Mr. Rosling advised said juror that Mr. Gay would not be in attendance, whereupon said juror asked Mr. Rosling if he, Mr. Rosling, would be present following the verdict of the jury; that Mr. Rosling advised said juror that he intended to leave at the conclusion of the argument; said juror then in affiant's presence stated to Mr. Rosling that Mr. Gay had on the preceding day offered said juror's daughter a position in the office of said plaintiff, said Sun Life Assurance Company, and that said juror had discussed the matter with his (the juror's) family on the preceding evening and had decided to have his daughter accept such offer; that Mr. Rosling then advised said juror to contact Mr. Gay at his office in Seattle; that such offer on behalf of said plaintiff constituted misconduct on the part of the prevailing party in the within action and was prejudicial to the defendants and prevented the defendants from having a fair trial of the issues involved herein."

Juror Dow's affidavit is as follows:

"W. N. Dow, being first duly sworn, on oath deposes and says: That he has read copies of the affidavits of J. L. Rucker dated March 30, 1944, and of Guy Gay dated March 31, 1944. The conversation referred to in Mr. Rucker's affidavit is substantially correct. However, this conversation was not repeated in the jury room during its deliberation, and no other juror to affiant's knowledge was aware of the fact of this conversation between Mr. Guy Gay and affiant's daughter. Affiant further states that such conversation did not in any way influence affiant in arriving at his verdict."

Immediately after the incident related in Mr. Rucker's affidavit occurred, the court convened, instructions were

read to the jury, arguments of counsel took place, and the jury then retired to the jury room to deliberate upon its verdict. As soon as the jury had retired, and before any exceptions were taken to instructions, the following proceedings transpired:

"Mr. Rucker: I simply want in the record that at the opening of court this morning Juror No. 2, who I think is William Dow, in the presence of myself spoke to counsel asking where Mr. Gay was. Mr. Gay being the Northwest manager of the insurance company. He subsequently stated that Mr. Gay had yesterday, during the course of this trial, offered a position to his, the juror's daughter. That the daughter had discussed it with them last night, and that they had decided that she should accept that position, and he was anxious to get in touch with Mr. Gay for that purpose. I think I have stated it correctly, have I, counsel?

"Mr. Rosling: He asked me if Mr. Gay was going to be here today. I said I did not think so. He then stated that Mr. Gay had offered the position of stenographer to someone, and I did not catch who he said.

"Mr. Rucker: He stated it was his daughter, definitely, this morning to you.

"The Court: I will take the matter up later on if it becomes necessary."

Appellant's assignments of error are in granting a new trial upon the ground of misconduct of the prevailing party and of the jury, and in holding that the respondents had not waived their right to claim a new trial by waiting and speculating upon the result of the verdict before seeking a remedy for the alleged misconduct. It is appellant's first contention that the trial court improperly granted a new trial and abused its discretion in so doing.

Respondents' contention is stated in their brief, as follows:

"It is respondents' position that this state of facts, where a juror was during the course of the trial attempting to accept a thing of value, namely: a position for his daughter from one of the parties to the action and to communicate such acceptance to that party deprived him of the status of a fair and impartial juror such as contemplated by the constitutional right of trial by jury and constituted such misconduct as to vitiate the verdict."

In the instant case, there is no dispute in the facts as shown by the affidavits filed herein both in support of and in opposition to the motion for new trial. We have before us, then, the same undisputed facts for consideration as did the trial court, and any difference of opinion as to whether or not the trial court was justified in granting the new trial must be based upon the conclusions to be drawn from such facts.

While it is true we have held that the granting of, or refusing to grant, a new trial is discretionary with the trial court except where pure questions of law are involved, and that the action of the trial court will not be disturbed unless we can see from the record that its discretion has been abused (*Danielson v. Carstens Packing Co.*, 115 Wash. 516, 197 Pac. 617), we have repeatedly emphasized the application of the rule where the order granting the new trial is based upon controverted questions of fact. Thus, in *Mathisen v. Norton*, 187 Wash. 240, 244, 60 P. (2d) 1, cited by respondents, we stated:

"The order was based on a *controverted question of fact* arising out of evidence taken by the respective parties. In *such cases*, the ruling of the court will not be disturbed in the absence of a showing of abuse of discretion." (Italics ours.)

In the cited case we then quoted from *State v. Welty*, 65 Wash. 244, 118 Pac. 9, as follows:

" 'The granting of a new trial upon controverted questions of fact is so largely a matter of discretion with the trial judge that his ruling thereon will seldom be disturbed, and then only when there is evidence in the record of an abuse of such discretion.' "

It may be admitted that we have stated that,

"Ordinarily, a much stronger showing of an abuse of discretion is required to set aside an order granting a new trial than one denying a new trial. . . . The jury must necessarily act as a unit, and the misconduct of any juror, actual or implied, which *forestalls or prevents a fair and proper consideration of the case* is the misconduct of the jury and vitiates the verdict." (*Mathisen v. Norton, supra.*) (Italics ours.)

█ We are entirely in accord with the rules above announced and with the following statement found in *Alexson v. Pierce County,* 186 Wash. 188, 193, 57 P. (2d) 318:

"The right to trial by jury includes the right to an unbiased and unprejudiced jury, and a trial by a jury, one or more of whose members is biased or prejudiced, is not a constitutional trial."

The question of "communication with jurors," in connection with a motion for new trial, is discussed in 46 C. J. 136, 137, § 90. See, also, 39 Am. Jur. 109, § 95, under the heading "Misconduct Directly Affecting Jury."

There are many ways in which misconduct of a party litigant and of the jury may arise, and it is apparent from the decisions of this court and others that, where certain conditions are shown, the courts have gone to greater length in holding that misconduct had been shown, even where misconduct was denied and actual prejudice on the part of a juror was not shown to exist; such as, for instance, where it appears that a juror and a party to the action were seen drinking together during the progress of the trial; where a juror was seen in conversation with one of the parties to the action during the trial and in such a manner as to convey the idea of secrecy, or, in other words, in such a manner as to have made it possible for something to have been said to influence the juror in arriving at his verdict.

Such holdings are undoubtedly based on the theory that trials should not only be fairly conducted in fact, but also should have the appearance of fairness, and it would tend greatly to bring judicial proceedings into disrepute if matters such as above mentioned should be overlooked and tolerated. Cases typical of those where a new trial was granted because of claimed misconduct of a party and the jury, based upon situations such as above mentioned, are: *Vollrath v. Crowe,* 9 Wash. 374, 37 Pac. 474, 55 A. L. R. 757, where plaintiff and one of the jurymen were drinking and playing cards together in a saloon during the progress of the trial; *Buchanan v. Laber,* 39 Wash. 410, 81 Pac. 911, where appellant and one of the jurors were seen in conversation on several occasions during the trial, when no others

were present, and, after the evening meal of the day on which the trial was finished, were seen drinking together at the hotel bar, appellant paying for the drinks.

The cases all present a different factual situation, and we must, therefore, consider each case from the standpoint of its particular facts, having in mind the rules hereinbefore announced. It should be kept in mind that, in the instant case, Mr. Gay never talked to, nor had any personal contact with, juror Dow or any other juror. Mr. Gay's remarks, outside of those made in the presence of Mr. Rucker, were directed to the young ladies, none of whom he knew. Mr. Gay did not inquire as to the names of any of these girls, and they did not tell him their names. Mr. Gay's reference to employment was a general statement made to all of them. There was no secrecy about this conversation, as it occurred in the court room, at recess, and in the presence of all who were there. It is not claimed that anything was said about this case, and Mr. Gay denies that he had any idea of influencing the jury.

■ It certainly does not appear affirmatively from this record that there was any misconduct on the part of Mr. Gay, nor do we think misconduct can be presumed from any acts of his, judged by any standard that we know of. Every conversation that a litigant may have, even with a juror, during the trial is not ground for a new trial. 46 C. J. 137, § 90. In *Deighton v. Hover,* 58 Wash. 12, 107 Pac. 853, we stated, p. 15:

"It is also argued that the court erred in not granting a new trial, because one of the respondent's counsel during the trial held a conversation with one of the jurors. This conversation appears to have occurred in the presence, if not within hearing, of appellant's counsel, in a public place, and no reference was made to this case in such conversation."

In the case of *Vowell v. Issaquah Coal Co.,* 31 Wash. 103, 71 Pac. 725, it was contended the court erred in not granting the motion of appellant to discharge the jury because of alleged misconduct of one of the plaintiffs and one of the

jurors in engaging in conversation during recess of the court. The opinion states:

"This conversation occurred in the public corridor at the court house where jurors, witnesses, litigants, and spectators were mingling indiscriminately, and, while it is absolutely necessary that jurors should be kept beyond the influence of interested parties, or even above the reasonable suspicion of undue influence, it does not seem to us that, considering the circumstances of the case, the *publicity of the meeting*, the fact that it is customary for country people to greet each other when they meet in public places, *the want of any circumstance showing intrigue on the part of the juror and the respondent, or any attempt to escape observation*, the policy of the law would *warrant a discharge of the jury, or that the presumption of an attempt to use undue influence would obtain.* It is insisted by counsel for appellant—and it is no doubt true—that, where *an attempt* has been made to unduly influence a juror, the presumption would be that such attempt was successful. But such was not the case here." (Italics ours.)

We appreciate that a new trial may be granted because of misconduct of the jury regardless of any misconduct on the part of a litigant to the case, and, if any support is to be found in this case for the order granting the new trial, it must be based upon a presumption that Dow's verdict, and, consequently, the jury's verdict, was influenced by what transpired. This, in reality, is respondents' contention as shown by the quotation from respondents' brief hereinbefore set out; in fact, respondents place juror Dow in the same category as a juror who had accepted a bribe or hospitality from a party in the case.

There was no showing in this case that Mr. Dow ever negotiated with appellant or any one representing appellant, and, therefore, no foundation for respondents' statement found on page thirteen of their brief that "while the case was in progress and before it was submitted to him, he negotiated with a party litigant for a valuable favor for his daughter"; nor is there, in fact, any foundation for the further statement found on page thirteen of respondents' brief that "he [Mr. Dow] voluntarily placed himself under obligations to such litigant."

How Mr. Dow placed himself, voluntarily or in any other manner, under obligation to appellant, we are unable to see. It seems to us that we would have to indulge in a violent presumption, under the facts in this case, to hold there was such misconduct on the part of Mr. Dow as to warrant the granting of a new trial. If it can be said to appear affirmatively from the facts herein, or presumed from such facts, that Mr. Dow was not a fair and impartial juror, then, certainly, our system of allowing the jurors in a civil case to separate is a failure, for, in almost every case, and especially in the smaller communities where jurors are compelled to mix with the public and, to some extent, with counsel, it could probably be shown that a juror, or some of the jurors, conversed with persons interested in the cases or even with counsel.

■ If, in our jury system, the practice of allowing jurors in a civil case to separate is sound, and it has universally been so recognized, then we must assume that the jurors will act fairly and impartially respecting their oaths as such jurors, and, as we said in *State v. Pepoon,* 62 Wash. 635, 644, 114 Pac. 449:

"We must indulge some presumptions in favor of the integrity of the jury. It is a branch of the judiciary, and if we assume that jurors are so quickly forgetful of the duties of citizenship as to stand continually ready to violate their oath on the slightest provocation, we must inevitably conclude that a trial by jury is a farce and our government a failure."

In *Stevens v. Depue,* 151 Wash. 641, 645, 276 Pac. 882, we quoted, with approval, the following statement made by the trial court:

" 'We must assume the jury acted honestly until the contrary affirmatively appears. The proof in this case does not meet the requirements.' "

■ We are also of the opinion that respondents waived their rights to claim a new trial because of alleged misconduct of appellant and of the jury. It will be remembered that, on Wednesday morning before court convened, Mr. Dow spoke to Mr. Rosling, one of the attorneys for appel-

lant, in the presence and hearing of Mr. Rucker, attorney for respondents. Mr. Rucker did not call the matter to the attention of the court until after the instructions had been read. Counsel had made their arguments to the jury, and the jury had retired to consider their verdict, and then Mr. Rucker merely made the statement hereinbefore set out. He did not, at that time, make any objection to what had occurred, or move for a mistrial and ask that the jury be discharged, but waited until a verdict had been returned unfavorable to respondents, and then moved for a new trial.

In 39 Am. Jur. 39, § 14, under the general heading "Right to New Trial; Waiver and Loss," we find the following statement:

"It is also a well-recognized and frequently applied principle that a party litigant will be deemed to have waived, or will be considered as being estopped to rely upon, matters constituting grounds of new trial which come to his attention or knowledge during the course of trial, or of which he should, by the exercise of reasonable diligence, have acquired knowledge, *where he fails to make objection at the time and seek to have the defects cured.* In other words, one is not entitled to a new trial when it appears that he had knowledge of the irregularity of which he complains and did not promptly seek to have the defect corrected at the trial of the case, or that his failure to obtain such knowledge and have the defect corrected was due to his own fault or lack of diligence. . . . It is equally well settled that a party litigant who acquires knowledge of misconduct on the part of a juror during the course of trial or of misconduct of his opponent, his counsel, or the court, directly affecting a juror, *and fails to make objection thereto and seek a remedy at the time,* or by lack of diligence fails to acquire knowledge of such misconduct in time to make objection before verdict, is deemed to waive his right to assert that as a ground for new trial." (Italics ours.)

"The misconduct of jurors or of other persons affecting jurors is not ordinarily ground for a new trial if the unsuccessful party, having knowledge of the misconduct before the verdict, failed to call the attention of the court thereto and *ask proper relief.*" 46 C. J. 159, § 128. (Italics ours.)

Under the citation last above set out, we find the case of *Hopkins v. Copalis Lbr. Co.*, 97 Wash. 119, 165 Pac. 1062, wherein we adopted the reason for the rule as stated in 2 Thompson on Trials (2d ed.) 1893, § 2613, a part of which we quoted, p. 120:

" 'The rule proceeds upon the ground that the party ought not to be permitted, after discovering an act of misconduct which would entitle him to claim a new trial, to remain silent and take his chances of a favorable verdict, and afterwards, if the verdict goes against him, bring it forward as a ground for a new trial.' "

It is the contention of counsel for respondents that calling the court's attention to the claimed misconduct was sufficient to protect their rights to claim error, based upon such misconduct, regardless of the fact that they did not seek to have the situation remedied. It may be admitted that, according to respondents' contention, at the time this matter was called to the court's attention the damage was done, if anything had been done which might, or did, cause juror Dow to become an unfair juror; but the trial court could not tell, when this matter was merely called to its attention, whether or not the respondents were claiming error, in the absence of such a claim and a demand that the court rule on the matter.

In a situation such as is here presented, it is not the duty of the trial court to take the initiative when no affirmative action by the court is asked. We stated in *State v. Van Waters*, 36 Wash. 358, 364, 78 Pac. 897:

"The remedy to correct misconduct of counsel is to move the trial court to act in the matter, and except to its refusal so to do, if it does so refuse; it is not enough merely to except to the supposed misconduct."

In *State v. Bailey*, 31 Wash. 89, 71 Pac. 715, at page 94, we find the following statement:

"Misconduct of counsel on the part of the state is assigned as error, and a few extracts from the record are suggested as the basis of this assignment. We, however, find no objection made to the alleged misconduct at *the time it occurred*. The court was not asked to correct counsel, and no exception appears in the record upon that sub-

ject. *Misconduct of counsel cannot be urged here unless the trial court was asked to correct it* and to properly instruct the jury concerning the same, followed by exception to the court's refusal so to do." (Italics ours.)

See, also, *State v. Smails,* 63 Wash. 172, 115 Pac. 82; *Knapp v. Chehalis,* 65 Wash. 350, 118 Pac. 211; and *Hart v. Bogle,* 88 Wash. 125, 152 Pac. 1010. We are unable to see why a different rule should be applied in the instant case, where it is claimed there was misconduct on the part of appellant and of the jury, than was applied where there was a claim of misconduct of counsel.

It may be admitted that, in a case such as now before us, no admonition that could be given by the trial court could correct the situation, if actual misconduct had occurred; but respondents had a remedy, and it was their duty, if they expected to claim error based upon the alleged misconduct of appellant and the jury, not only to call the matter to the attention of the trial court, but also to claim a mistrial and ask that the jury be discharged and, upon the refusal of the trial court so to do, to take exception to such ruling, and not to wait, as did respondents in this case, until an adverse verdict had been rendered, and then, for the first time, claim error based upon such alleged misconduct.

It seems to us that the procedure we have outlined is the orderly way to proceed and a procedure that should be followed in fairness to the trial court, and is one which, we think, is clearly sustained by our decisions and the authorities generally.

We are of the opinion, therefore, that, in this case, respondents waived their right to claim error based upon the alleged misconduct of appellant and of the jury by failing to take the additional steps hereinbefore mentioned at the time such alleged misconduct was called to the attention of the court.

For the reasons assigned, we conclude that the trial court abused its discretion in granting respondents a new trial, and it follows that the order must be, and is, reversed and

the case remanded to the trial court, with instructions to enter judgment in accordance with the verdict.

BEALS, C. J., and GRADY, J., concur.

MILLARD, J. (dissenting)—I am of the view that the misconduct warranted court in granting a new trial; therefore, the judgment should be affirmed.

STEINERT, J. (concurring specially)—I agree that, under the facts shown by the record, Mr. Gay was not guilty of any misconduct whatever. I further agree that the particular juror was not guilty of any *intentional* misconduct, although I am of the opinion that the trial judge would have been warranted in declaring a mistrial because of the possible effect of the juror's activity in procuring, or endeavoring to promote, the prospective employment of his daughter by the appellant, a litigant in the case then on trial. However, respondents did not move for a mistrial nor did they ask for any other corrective measure to be applied by the court, but, rather, speculated upon obtaining a verdict favorable to themselves. By their failure to ask for proper relief in the premises, respondents waived any claim of error based on the alleged misconduct of the juror. On that ground, I concur with the majority.